**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 14-4932**
_____

UNITED STATES OF AMERICA,

               Plaintiff - Appellant,

    v.

DMYTRO PATIUTKA, a/k/a Alex Parker, a/k/a Roman Pak, a/k/a
Andrii Patiutka,

               Defendant - Appellee.

_____

Appeal from the United States District Court for the Western
District of Virginia, at Harrisonburg.   Michael F. Urbanski,
District Judge.  (5:14-cr-00014-MFU-1)

_____

Argued:  September 15, 2015       Decided:  October 23, 2015

_____

Before WILKINSON, MOTZ, and AGEE, Circuit Judges.

_____

Affirmed by published opinion.  Judge Motz wrote the opinion, in
which Judge Wilkinson and Judge Agee joined.

_____

**ARGUED**: Jean Barrett Hudson, OFFICE OF THE UNITED STATES
ATTORNEY, Charlottesville, Virginia, for Appellant.   Andrea
Lantz Harris, OFFICE OF THE FEDERAL PUBLIC DEFENDER,
Charlottesville, Virginia, for Appellee.  **ON BRIEF**: Anthony P.
Giorno, Acting United States Attorney, OFFICE OF THE UNITED
STATES ATTORNEY, Charlottesville, Virginia, for Appellant.
Larry W. Shelton, Federal Public Defender, Christine Madeleine
Lee, Research and Writing Attorney, OFFICE OF THE FEDERAL PUBLIC
DEFENDER, Roanoke, Virginia, for Appellee.

_____

DIANA GRIBBON MOTZ, Circuit Judge:

The district court granted Dmytro Patiutka's motion to suppress evidence flowing from a warrantless search of his vehicle. The Government challenges that ruling, asserting that the search was incident to an arrest or, in the alternative, fell within the automobile exception to the Fourth Amendment's warrant requirement. We affirm.

I.

On April 27, 2013, Virginia State Trooper G.S. Cox, while patrolling Interstate 81, observed an SUV with tinted windows and a tinted license plate cover, which potentially violated Virginia law. When the driver failed to maintain lane, the trooper pulled the car over. A video camera on the patrol car's dashboard recorded the stop.

Trooper Cox approached the car and asked the driver for his license. The driver, Dmytro Patiutka, handed him a Lithuanian driver's license with the name "Roman Pak." The trooper then asked Patiutka for his name and date of birth and later testified that Patiutka gave him a date that differed by eight years from the date on the driver's license. Although Trooper Cox testified that at this point he "believed [Patiutka] was lying to [him] about his identity," which he understood to be an

2

arrestable offense in Virginia, the trooper asked no follow-up questions about Patiutka's purported lie.

Instead, Trooper Cox ran the information supplied by Patiutka through police databases and, after receiving no results, returned Patiutka's license, gave him verbal warnings for the tint violations, and told Patiutka to "have a nice day" and that he was "free to go." Trooper Cox later testified that, "[i]n [his] mind, [Patiutka] wasn't free to leave." Rather, the trooper intended to reengage Patiutka in conversation and obtain his consent to search the car.

As Patiutka began to walk back to his vehicle, Trooper Cox asked him if he would answer "a couple of questions real quick." The trooper then asked for and believed he received consent to search the car, and so signaled his fellow officers, who had by then arrived on the scene, to begin searching. As many as five other officers participated in the search, including Trooper Jerry Moore, a member of Trooper Cox's unit. Trooper Moore found a bag containing a credit card reader in the SUV's hatchback area and opened one of several large suitcases, revealing four new, unopened iPads sitting on top. Meanwhile, Patiutka asked Trooper Cox why the officers were searching his car. Trooper Cox answered, "I asked you could I search your car," to which Patiutka replied, "no, close the car." Trooper Cox responded by announcing, "hold on, hold on."

3

Upon hearing this, Trooper Moore stopped searching for a moment, but then announced that he was placing Patiutka in "investigative detention." Based on this command, Trooper Cox handcuffed Patiutka and took him back to the patrol car. Trooper Moore later testified that he placed Patiutka only in investigative detention because he did not think he had probable cause to arrest Patiutka. But, given "the multiple iPads in the vehicle and the credit card reader" and Trooper Cox's conduct (the stop and request to search), Trooper Moore believed Patiutka was potentially involved in "criminal activity."

The officers continued to search the SUV for approximately fifty minutes; they found a credit card embosser, a credit card re-encoder, and numerous blank credit cards. At the conclusion of the search, Trooper Cox transported Patiutka to the state police station and, during the trip, read him his Miranda rights. At the station, Trooper Moore and two Secret Service agents conducted interviews of Patiutka, during which he made a number of incriminating statements.

That same day, Patiutka received traffic summonses for the state traffic violations for which he was pulled over: improper license plate cover, failure to maintain lane, and illegal window tint. Eight months later, on January 13, 2014, the Government filed a criminal complaint in federal court, charging Patiutka with access device fraud and aggravated identity theft

4

in violation of 18 U.S.C. §§ 1029 and 1028A. On March 20, 2014, a grand jury indicted Patiutka on these charges.

Patiutka moved to suppress the physical evidence seized from his car as well as all statements and evidence that flowed from the warrantless search. At the suppression hearing, Trooper Cox testified that Patiutka gave a birth year of 1982, eight years earlier than the 1990 date on Patiutka's license, and that this caused the officer to believe Patiutka "was lying . . . about his identity." Trooper Cox further testified that even "if we hadn't of [sic] found anything in the vehicle, [Patiutka] would have ultimately been arrested for providing a false ID."

In the district court, the Government claimed that Patiutka's statements and the evidence found in his car were admissible under numerous exceptions to the Fourth Amendment's warrant requirement. In a lengthy written opinion, the district court rejected each of the Government's asserted justifications. The Government then filed this interlocutory appeal.

We review a district court's legal determinations underlying a grant of a motion to suppress de novo and its factual findings for clear error. United States v. Black, 707 F.3d 531, 537 (4th Cir. 2013). The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and

seizures." U.S. Const. amend. IV. Warrantless searches are presumptively unreasonable "except in certain carefully defined classes of cases." Cady v. Dombrowski, 413 U.S. 433, 439 (1973) (internal quotation marks omitted).

Before us, the Government narrows its focus and asserts that two exceptions to the warrant requirement justified the warrantless search of Patiutka's car. We consider each in turn.


II.

First, the Government argues that the search was incident to Patiutka's arrest.

Police officers may search a vehicle incident to a recent occupant's arrest when "the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." Arizona v. Gant, 556 U.S. 332, 351 (2009). A search may begin prior to an arrest, and still be incident to that arrest. Rawlings v. Kentucky, 448 U.S. 98, 111 (1980); United States v. Miller, 925 F.2d 695, 698 (4th Cir. 1991). However, police must have probable cause to arrest prior to beginning a search. See United States v. Han, 74 F.3d 537, 541 (4th Cir. 1996). This requirement ensures that the fruits of a warrantless search will not serve as justification for the

6

arrest. See, e.g., <u>Sibron v. New York</u>, 392 U.S. 40, 62-63 (1968).

We note at the outset that the Government does not contend that the police conducted a search incident to Patiutka's arrest for access device fraud and aggravated identity theft, even though the challenged portion of the search (after withdrawal of consent) was initiated and conducted to obtain evidence of those crimes. Instead, the Government argues that Trooper Cox had probable cause to arrest Patiutka for the state offense of providing false identity information and that the search was valid as incident to Patiutka's arrest on that charge. Assuming that the record permits such an argument, and that the offense justifying a search incident to arrest can be different from the offense for which a defendant was arrested, the argument still fails.[1] This is so because probable cause did not exist for the officers to arrest Patiutka for <u>any</u> offense at the moment he revoked consent.

---

[1] The district court found that Patiutka was <u>not</u> arrested for the state false identity offense. And though the Government maintains on appeal that Patiutka was indeed arrested for the state offense of presenting "false identity information to a law enforcement officer," the Government concedes that the documents evidencing that arrest "were not presented during the suppression hearing proceedings." Appellant's Br. at 7 n.4. Moreover, we have no need to address the question of whether an offense justifying a search may differ from the offense for which a defendant was arrested, and decline to do so.

The district court's factual findings forestall the Government's argument that the challenged search was incident to any arrest of Patiutka, as the court did not credit Trooper Cox's testimony as to the factual basis of his asserted authority to arrest Patiutka prior to the search. Rather, the court found the trooper's testimony unconvincing when weighed against verifiable evidence indicating that the trooper did not have probable cause to arrest Patiutka at that time. We can reverse only if this finding was clearly erroneous. Moreover, we must view the facts in the record in the light most favorable to Patiutka because he prevailed before the district court. United States v. Green, 740 F.3d 275, 277 (4th Cir. 2014). We owe "particular[] defer[ence] to a district court's credibility determinations, for 'it is the role of the district court to observe witnesses and weigh their credibility during a pre-trial motion to suppress.'" United States v. Abu Ali, 528 F.3d 210, 232 (4th Cir. 2008) (quoting United States v. Murray, 65 F.3d 1161, 1169 (4th Cir. 1995)).

At the suppression hearing, the Government had the burden of proving by a preponderance of the evidence that Trooper Cox had probable cause to arrest Patiutka. See Coolidge v. New Hampshire, 403 U.S. 443, 455 (1971). In concluding that the Government did not meet its burden, the district court relied on the video of the stop. The court noted that the video showed

8

that Trooper Cox asked Patiutka no follow-up questions regarding Patiutka's purported lie as to his birthdate, but rather handed the license back to Patiutka and told him he was "free to go." The video also showed that after Trooper Cox asked for (and believed he received) Patiutka's consent to search, the trooper immediately called off the search when Patiutka objected, suggesting that the only basis for the search was consent. And the video did not substantiate the existence of the primary evidence the Government relied on in asserting that Trooper Cox did have probable cause. That evidence was the trooper's testimony that Patiutka supplied a different birthdate than the date on his license. The district court found that, because of highway traffic noise, a barking police dog, and Patiutka's pronounced foreign accent, the video did not reveal exactly what Patiutka said was his birthdate. For these reasons, the court concluded, "I don't believe there's sufficient probable cause to arrest him based on . . . the evidence that I have seen after hearing the officer's testimony and after viewing that video." We discern no error in this finding.

We hasten to add it does not follow that we believe, or that the district court believed, that Trooper Cox lied about the date. Even Patiutka argues only that the trooper was "mistaken and that probable cause didn't exist at that time." The district court expressly held that it did not "doubt the

good faith" of the troopers.  The court simply concluded, as it was entitled to do on these facts, that the Government had failed to meet its burden of proof.

The absence of probable cause to arrest Patiutka for any offense[2] at the moment Trooper Moore decided to continue the search without Patiutka's consent renders the search incident to arrest exception inapplicable here.  See, e.g., Han, 74 F.3d at 541.  Probable cause to arrest arose only after the officers discovered the blank credit cards, credit card embosser, and other evidence of identity theft and fraud.  A finding that this search was incident to Patiutka's subsequent arrest would permit the Government "to justify the arrest by the search and at the same time to justify the search by the arrest."  Johnson v. United States, 333 U.S. 10, 16-17 (1948).  The Fourth Amendment forbids this type of unreasonable search.


III.

Next, the Government argues that the warrantless search was valid under the automobile exception to the warrant requirement.

---

[2] As noted above, the Government does not argue that at the time Patiutka revoked consent the officers had probable cause to arrest him for any offense other than the false identity offense.  Thus, the Government does not contend that it had probable cause to arrest Patiutka for access device fraud or aggravated identity theft, the offenses for which he was later charged.

10

A.

Police officers do not need a warrant to search an automobile if they have probable cause to believe it contains evidence of criminal activity. United States v. Ross, 456 U.S. 798, 809 (1982). Probable cause exists when "the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." Ornelas v. United States, 517 U.S. 690, 696 (1996). Probable cause deals in probabilities that "are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Brinegar v. United States, 338 U.S. 160, 175 (1949). Under the automobile exception, police officers may search for evidence of any crime, not just of the offense that provided the basis for the arrest. United States v. Baker, 719 F.3d 313, 319 (4th Cir. 2013).

When Trooper Moore decided to continue to search the SUV without Patiutka's consent, the district court found that he was aware of the following facts: "(1) for reasons unknown to [Trooper Moore], Trooper Cox [had] requested a search of the vehicle; (2) there were three suitcases in the back of Patiutka's vehicle; (3) one bag contained a credit card reader; [and] (4) a larger suitcase had four new iPads on top of it."

11

The court concluded that these facts did not provide an objective basis for probable cause to search.

We agree. A driver could legally possess the credit card reader and iPads that Trooper Moore had uncovered at that point. While the trooper found their combination and placement suspicious, innocuous explanations for a driver's possession of these items abound. For example, many small business owners now utilize iPads with attached credit card readers in lieu of traditional point-of-sale systems. To be sure, that is not how Patiutka intended to employ the iPads, but neither Trooper Moore nor any of the officers present asked Patiutka about the items.[3]

Like the district court, we acknowledge that the facts known to Trooper Moore when he ordered the search to continue "may well meet the standard for a reasonable articulable suspicion." If so, the correct course of action would have been for the troopers to question Patiutka about the contents uncovered during the consensual search. Additional information arising out of this conversation could potentially have supported probable cause to search. But neither Trooper Moore nor any of the other troopers participating in the search paused

---

[3] Additionally, Trooper Moore could not infer evidence of a basis for a warrantless search from the fact that Trooper Cox had asked Patiutka if the police could search the car. Trooper Cox testified that he may ask permission to search a car when he lacks probable cause.

12

to speak with Patiutka before placing him in handcuffs and resuming the search. Because the automobile exception requires that the police have probable cause (not just reasonable articulable suspicion) to search, the exception does not apply here.

B.

The Government contends that an additional piece of information provided Trooper Moore with sufficient knowledge to support probable cause to search. Invoking the collective-knowledge doctrine, the Government insists that Trooper Cox's suspicions regarding Patiutka's potentially false identification should be imputed to Trooper Moore. The Government's theory is that, when combined with the other pieces of information known independently to Trooper Moore, these facts tip the scale in favor of probable cause. The district court declined to apply the collective-knowledge doctrine here because the officers "simply did not communicate with each other." We agree with the district court that the doctrine does not save this search, but for the alternative reason that, as we explained above, Trooper Cox had no probable cause to communicate to a fellow officer.

The collective-knowledge doctrine "simply directs [a court] to substitute the knowledge of the <u>instructing officer or officers</u> for the knowledge of the <u>acting officer</u>; it does not permit [a court] to aggregate bits and pieces of information

13

from among myriad officers." United States v. Massenburg, 654 F.3d 480, 493 (4th Cir. 2011). In Massenburg, we rejected a more expansive version of the doctrine that the Government had proposed and that several circuits have adopted because "[u]nder th[at] proposed rule, it would be irrelevant that no officer had sufficient information to justify a search or seizure." Id. Thus in Massenburg we held that the instructing officer alone must have sufficient information to justify an arrest or search in order for the acting officer to benefit from the collective-knowledge doctrine. Id. at 495-96.

In sum, the same credibility determination by the district court that precludes application of the search incident to arrest exception also thwarts the Government's collective-knowledge argument. Here the district court found that the instructing officer, Trooper Cox, did not have probable cause to arrest Patiutka when he initiated the search. Rather, the search proceeded solely on the basis of Patiutka's consent. When Patiutka revoked his consent, Trooper Cox halted the search, indicating to the other officers that a basis for the search no longer existed. The record evidence is clear that Trooper Moore understood that Trooper Cox, the instructing officer, had halted the search. Nonetheless, Trooper Moore determined to continue the search. Massenburg teaches that "the only officer making a reasonable suspicion or probable cause

determination is the instructing officer." 654 F.3d at 495 n.6. Here, the instructing officer, Trooper Cox, made no such determination. Instead, Trooper Cox instructed his fellow officers to search the SUV when he believed he had Patiutka's consent and immediately called off the search when he understood that he no longer had consent. Accordingly, the collective-knowledge doctrine offers no assistance to the Government.

## IV.

For the foregoing reasons, neither of the Government's proposed exceptions to the Fourth Amendment's warrant requirement apply here. Therefore, the judgment of the district court granting Dmytro Patiutka's motion to suppress is

AFFIRMED.