**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

### No. 20-4035

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

HOWARD DAVIS,

        Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. James C. Dever III, District Judge. (5:17–cr–00174–D–1)

Argued: January 26, 2021                     Decided: May 7, 2021

Before GREGORY, Chief Judge, WYNN and THACKER, Circuit Judges.

Reversed and remanded by published opinion. Judge Wynn wrote the opinion, in which Chief Judge Gregory and Judge Thacker joined.

**ARGUED:** Marvin D. Miller, THE LAW OFFICES OF MARVIN D. MILLER, Alexandria, Virginia, for Appellant. Joshua L. Rogers, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Robert J. Higdon, Jr., United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, Gabriel J. Diaz, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

WYNN, Circuit Judge:

In *Arizona v. Gant*, the Supreme Court held that incident to an arrest, a vehicle may be searched without a warrant if it was reasonable for the police to believe that the arrestee "could have accessed his car at the time of the search." 556 U.S. 332, 344 (2009). Here, while Davis was handcuffed with his hands behind his back and lying on his stomach, the police searched his nearby backpack.

The issue we confront in this appeal is whether the Supreme Court's holding in *Gant* applies beyond the automobile context to the search of a backpack. We join several sister circuits in answering, yes. Accordingly, we vacate and remand this matter to the district court for further proceedings consistent with this opinion.

I.

On March 1, 2017, at around 2:45 pm, police officer Derek Richardson of the Holly Springs, North Carolina Police Department stopped a gray Honda Accord driven by defendant Howard Davis because he believed that the vehicle's windows were tinted too dark in violation of North Carolina law. Richardson approached Davis and explained that he had pulled Davis over because of the vehicle's window tint and obtained Davis's license and proof of insurance. A search of the relevant databases revealed that Davis's license was valid and that he "had a history of felony drug charges and convictions." J.A. 141.[1]

---

[1] Citations to "J.A. __" refer to the Joint Appendix filed by the parties in this appeal.

Two additional uniformed officers, David Veiling[2] and Paul Boyd, arrived in a separate patrol car, parked behind Richardson's vehicle, and activated their car's lights. About three minutes into the stop, while Richardson talked with the other two officers, Davis put his hand out of his window and "ma[de] a pointing gesture indicating that he was leaving." J.A. 142. Davis then drove off without his license or proof of insurance, which were still in Richardson's possession.

The officers gave chase. Davis raced through a residential neighborhood, at times reaching speeds of up to 50 miles per hour—double the neighborhood's speed limit. The pursuit continued until Davis reached a dead-end cul-de-sac, drove in between two houses and into someone's backyard, got out of his vehicle carrying a backpack, ran on foot into a swamp, and got stuck in knee-high water. Richardson, also on foot and roughly seven to ten yards behind Davis, drew his service weapon and ordered Davis to come out of the swamp. Davis complied by returning to dry land, dropping the backpack, and lying down on his stomach.

Richardson patted Davis down and found a large amount of cash on Davis's person. Richardson then handcuffed Davis's hands behind his back and placed him under arrest for "several traffic violations, including felony flee to elude." J.A. 61–62.

---

[2] The record reflects two different spellings of Veiling's surname. We use the spelling found in the government's briefing.

Afterwards, Richardson unzipped the closed backpack and discovered "large amounts of cash and two plastic bags containing what appeared to be cocaine."[3] J.A. 143. A search of Davis's vehicle revealed a digital scale, a bag containing bundles of cash, and other items. The officers also received a report that a witness had observed Davis toss a firearm out of his car window while fleeing. Acting on this information, the officers recovered a .45 caliber handgun from Davis's path of flight through the residential area.

On June 7, 2017, a federal grand jury returned a three-count indictment charging Davis with possession with intent to distribute twenty-eight grams or more of cocaine base and an unspecified quantity of cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count I); possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c) (Count II); and being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924 (Count III).

Before trial, Davis filed a motion to suppress, contending that the evidence seized from his backpack and vehicle should be suppressed because the officers' warrantless searches violated his rights under the Fourth Amendment. The district court denied Davis's motion.

On September 11, 2018, a jury returned a guilty verdict on all three Counts. After dismissing Davis's felon-in-possession conviction,[4] the district court sentenced Davis to

---

[3] Subsequent testing confirmed that these bags contained "approximately 28 grams of cocaine base and approximately 178 grams of cocaine." J.A. 143–44.

[4] Davis filed a motion for a new trial on Count III in light of the Supreme Court's decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019). The government responded that it would

420 months imprisonment on the remaining counts: 360 months on Count I, followed by 60 months on Count II, to be served consecutively. Davis timely filed a notice of appeal.

## II.

On appeal of the district court's denial of Davis's motion to suppress, we review legal conclusions *de novo* and factual findings for clear error, and we construe all evidence in the light most favorable to the government. *United States v. Vaughan*, 700 F.3d 705, 709 (4th Cir. 2012).

### A.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "'A warrantless search by the police is invalid unless it falls within one of the narrow and well-delineated exceptions' to the Fourth Amendment's warrant requirement." *United States v. Ferebee*, 957 F.3d 406, 418 (4th Cir. 2020) (quoting *Flippo v. West Virginia*, 528 U.S. 11, 13 (1999) (per curiam)). "The government bears the burden of proof in justifying a warrantless search or seizure." *United States v. McGee*, 736 F.3d 263, 269 (4th Cir. 2013).

One exception to the warrant requirement authorizes searches incident to a lawful arrest. *United States v. Robinson*, 414 U.S. 218, 224 (1973). The search-incident-to-arrest exception allows arresting officers to search both "the arrestee's person and the area 'within

dismiss the Count in light of the *Rehaif* issue. As such, the district court dismissed Count III.

5

his immediate control.'" *Davis v. United States*, 564 U.S. 229, 232 (2011) (quoting *Chimel v. California*, 395 U.S. 752, 763 (1969)).

This exception has its origins in *Weeks v. United States*, a 1914 decision in which the Supreme Court acknowledged the government's "right"—which had "always" been "recognized under English and American law"—to "search the person of the accused when legally arrested to discover and seize the fruits or evidences of crime." 232 U.S. 383, 392 (1914).

More than a half-century later, the Court expounded on the principles underlying the exception in its 1969 decision in *Chimel v. California*. In that case, police officers engaged in a warrantless search of the defendant's entire home, including his attic and garage. 395 U.S. at 753–54. The officers justified the search as a search incident to arrest. *Id.* at 754–55.

In articulating the limits of the search-incident-to-arrest exception, the Supreme Court emphasized that it was "reasonable" for arresting officers to search the person being arrested and the area within his reach (1) "in order to remove any weapons that the [arrestee] might seek to use in order to resist arrest or effect his escape" and (2) "in order to prevent [the] concealment or destruction" of evidence. *Id.* at 763. The Court concluded that there was therefore "ample justification . . . for a search of [(1)] the arrestee's person and [(2)] the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." *Id.* But

6

because there was "no constitutional justification" for the warrantless search of the defendant's *entire home*, the Court held the search in *Chimel* to be unreasonable. *Id.* at 768.

Four years later, the Supreme Court again considered the boundaries of the exception in *United States v. Robinson*. There, an officer patted down the defendant during his arrest. 414 U.S. at 220–23. The pat-down search revealed a crumpled cigarette package containing fourteen capsules of heroin. *Id.* at 223. Although the arresting officer expressed no *subjective* concerns about his safety or the preservation of evidence, the Court held that the search of the defendant's person was permissible because "[a] custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment," and "that intrusion being lawful, a search incident to the arrest requires no additional justification." *Id.* at 235–36. As to the cigarette package, the Court held that because the officer discovered the package "in the course of a lawful search," the officer was "entitled to inspect it; and when his inspection revealed the heroin capsules, he was entitled to seize them as 'fruits, instrumentalities, or contraband' probative of criminal conduct." *Id.* at 236 (quoting *Warden v. Hayden*, 387 U.S. 294, 307 (1967)).

In 1981, the Supreme Court issued its opinion in *New York v. Belton*. An officer arrested the four occupants of a vehicle for possession of marijuana. 453 U.S. 454, 455–56 (1981). While searching the car, the officer unzipped a jacket pocket he found in the back seat and discovered cocaine. *Id.* at 456. Recognizing that "courts have found no workable definition of 'the area within the immediate control of the arrestee' when that area arguably includes the interior of an automobile and the arrestee is its recent occupant," the Court held that "when a policeman has made a lawful custodial arrest of the occupant of an

7

automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *Id.* at 460.

Over time, the Court's opinion in *Belton* resulted in lower-court decisions that "treat[ed] the ability to search a vehicle incident to the arrest of a recent occupant as a police entitlement rather than as an exception justified by the twin rationales of *Chimel v. California*." *Thornton v. United States*, 541 U.S. 615, 624 (2004) (O'Connor, J., concurring). Shortly after Justice O'Connor expressed this concern, the Court revisited the search-incident-to-arrest exception in *Arizona v. Gant*—the applicability of which is at issue in this appeal.

In *Gant*, officers arrested the defendant for driving with a suspended license, handcuffed him, and locked him in the back seat of a patrol car. 556 U.S. at 336, 344. Two police officers then searched the defendant's vehicle and found drugs and a firearm. *Id.* at 336. On review, the Supreme Court held that the officers' search was not a valid search incident to arrest, reaching two separate holdings.

First, the Court noted that "[t]o read *Belton* as authorizing a vehicle search incident to every recent occupant's arrest would . . . untether the rule from the justifications underlying the *Chimel* exception." *Id.* at 343. Relying on the rationales articulated in *Chimel*—specifically, officer safety and the preservation of evidence—the Court concluded that police can "search a vehicle incident to a recent occupant's arrest *only* when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search" (the "first *Gant* holding"). *Id.* (emphasis added). The ultimate inquiry

8

under the first *Gant* holding is whether it was reasonable for the police to believe that the arrestee "could have accessed his car at the time of the search." *Id.* at 344.

Second, the Court concluded that "circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle" (the "second *Gant* holding"). *Id.* at 343 (internal quotation marks omitted). And because (1) the defendant had been secured and out of reach of the passenger compartment and (2) it was not reasonable to believe the vehicle contained evidence relevant to the crime of arrest—a traffic violation—the Court concluded that the search was unlawful. *Id.* at 344.

## B.

On appeal, Davis urges this Court to apply the first *Gant* holding to "non-vehicular containers that were not on the arrestee's person"—in this case, his backpack. Opening Br. at 14–15. We agree with Davis that the first *Gant* holding applies outside the vehicular context.

We reach this conclusion because, while *Gant* involved the warrantless search of a vehicle incident to an arrest, *Chimel* did not. Considering the Supreme Court's reliance on the rationale of *Chimel*—a non-vehicle case—in reaching the first *Gant* holding, we do not read *Gant* as limited to the vehicular context. If the *Gant* Court intended to limit both of its holdings to vehicular searches, it certainly could have said so. Indeed, the Court specified that the *second Gant* holding was based on "circumstances unique to the vehicle context" (and that it "d[id] not follow from *Chimel*"). *Gant*, 556 U.S. at 343. But it made no similar

9

statement regarding the first holding. Accordingly, we see no reason to limit the first *Gant* holding—the one derived from *Chimel*—to searches of vehicles.

We are not alone in this approach. The Third, Ninth, and Tenth Circuits have reached the same conclusion.[5] *See United States v. Shakir*, 616 F.3d 315, 318 (3d Cir. 2010) (finding "no plausible reason" to limit *Gant*'s application to automobile searches); *United States v. Cook*, 808 F.3d 1195, 1199 n.1 (9th Cir. 2015) ("We do not read *Gant*'s holding as limited only to automobile searches because the Court tethered its rationale to the concerns articulated in *Chimel*, which involved a search of an arrestee's home."); *United States v. Knapp*, 917 F.3d 1161, 1168 (10th Cir. 2019) (reading *Gant* as "focusing attention on the arrestee's ability to access weapons or destroy evidence at the time of the search . . . regardless of whether the search involved a vehicle").

Accordingly, we conclude that the first *Gant* holding applies to searches of non-vehicular containers and conclude that police officers can conduct warrantless searches of non-vehicular containers incident to a lawful arrest "only when the arrestee is unsecured

---

[5] No circuit has held otherwise. *But cf. United States v. Curtis*, 635 F.3d 704, 713 (5th Cir. 2011) (declining to reach the question of "whether *Gant* applies solely in the vehicular-search context or whether it generally limits the scope of the search-incident-to-arrest exception"); *United States v. Perdoma*, 621 F.3d 745, 751–52 (8th Cir. 2010) (reasoning that *Gant*'s holdings "must be understood in that limited [vehicular] context," but ultimately declining to reach the question of "to what extent *Gant* has application beyond the context of vehicle searches").

and within reaching distance of the [container] at the time of the search." *Gant*, 556 U.S. at 343.

III.

Having determined that the first *Gant* holding applies outside of the vehicle context, we next consider whether the district court erred in denying Davis's motion to suppress. We conclude that it did.

A.

Richardson's warrantless search of Davis's backpack was only permissible as a search incident to arrest if it was reasonable for Richardson to believe that Davis "could have accessed [the backpack] at the time of the search." *Id.* at 344. In making this determination, we consider whether Davis was "unsecured and within reaching distance" of his backpack at the time of the search.[6] *Id.* at 343.

The evidence shows that after Davis exited his vehicle with his backpack in tow, he fled into a swamp and became bogged down in knee-high water. Richardson, with his service weapon drawn, ordered Davis to exit the swamp, and Davis complied. Back on

---

[6] There remains an open question as to whether the *Gant* inquiry (1) amounts to a two-factor test, both aspects of which the government must satisfy (secureness and reaching distance), or (2) is more akin to a sliding scale with two dimensions for evaluating the reasonableness of the officer's belief that the arrestee could access the container so as to retrieve a weapon or destroy evidence. *But see Ferebee*, 957 F.3d at 418–20 (implicitly assuming, in what strikes as dicta, that the evaluation is a sliding scale, not a two-factor test). We need not resolve this issue today. Under either formulation, in this case, the government has failed to satisfy its burden of justifying the warrantless search.

terra firma, Davis dropped his backpack and lay down on the ground, and Richardson handcuffed his hands behind his back. Veiling and Boyd then arrived on the scene.

Under these conditions, Richardson's warrantless search of Davis's backpack was unlawful. To be sure, there is a level of precarity when police officers arrest a suspect who has fled arrest. But there is no doubt that Davis was secured and not within reaching distance of his backpack when Richardson unzipped and searched it. Davis was face down on the ground and handcuffed with his hands behind his back. He had just been ordered out of the swamp at gunpoint. The only other individuals within eyesight were officers, who outnumbered him three to one. And while this all took place in a residential area, it appears there was no one else around to distract the officers. Without the fluid situation created by nearby observers, the officers were able to focus solely on Davis. We have no difficulty in concluding that Davis was secured.

As to whether the bag was within Davis's reaching distance, we acknowledge that he dropped the bag next to him before lying down. By the time of the search, however, Davis was handcuffed—severely curtailing the distance he could reach. We need not recount the various acrobatic maneuvers Davis would have needed to perform to place the backpack within his reaching distance at the time of the search. It is enough to say that, at the moment in question, the handcuffed and face-down Davis had severely restrained mobility and was not within reaching distance of the backpack next to him.

Seeking to resist this straightforward conclusion, the government cites this Court's decision in *United States v. Ferebee* and the Third Circuit's decision in *United States v.*

*Shakir*. But those opinions are of no help to the government's position because they are readily distinguishable.

In *Ferebee*, police officers conducting a warrantless search of a third-party's home discovered the defendant inside holding a marijuana blunt near a backpack. 957 F.3d at 410. Upon questioning from the officers, the defendant disclaimed ownership of the backpack. *Id.* An officer arrested and handcuffed the defendant before escorting him outside, leaving the door to the house open and the backpack inside. *Id.* at 410–11. Another officer who was still inside the house conducted a warrantless search of the backpack. *Id.* at 411.

Reviewing the denial of the defendant's motion to suppress the evidence discovered in his backpack, we held that the defendant "clearly and unequivocally disavowed ownership of the backpack," and therefore "abandoned the backpack and any legitimate expectation of privacy in its contents." *Id.* at 417. And assuming without deciding that *Gant* applied to non-vehicular searches, we went on to find that even if the defendant did not abandon his backpack, the search of the backpack was a proper search incident to arrest.[7] *Id.* at 418–19. We concluded that the defendant was unsecured because, although he was handcuffed and physically near an officer, "he still could walk around somewhat freely and could easily have made a break for the backpack inside the house." *Id.* at 419. What's more,

---

[7] *Ferebee*'s discussion of this point appears to have been dicta. *See* 957 F.3d at 423 (Floyd, J., dissenting) ("Despite holding that Ferebee abandoned his bag, the majority, in extensive dicta, goes on to conclude that even if Ferebee had not abandoned his bag, the search would not have required a warrant because it was incident to Ferebee's arrest."). Regardless, the case is distinguishable on the facts.

13

the defendant had both the wherewithal and the dexterity to tamper with evidence while handcuffed—surreptitiously discarding his marijuana joint without the officers noticing. *Id.*

Not so, in the case at hand. Like the defendant in *Ferebee*, Davis was handcuffed. But Davis was face-down on the ground with his hands behind his back, not "mill[ing] about" like the defendant in *Ferebee*. *Id.* In this posture—handcuffed and face-down— Davis was secured. The contrast here is key. It was arguably reasonable for the officers in *Ferebee* to believe that the defendant could access his bag because, although handcuffed and out of reaching distance, the defendant was not secured and presumably could have reentered the home and retrieved his bag. In contrast, Davis was *both* secured *and* not within reaching distance. Whether the first *Gant* holding is framed as a two-part test or as a spectrum-of-reasonableness inquiry, *see supra* note 7, it was not reasonable to believe that Davis could have accessed his backpack at the time of the search.

*Shakir*, a case we relied on in *Ferebee*, is no less distinguishable. In *Shakir*, the defendant was placed under arrest and dropped a duffel bag at his feet. 616 F.3d at 316. After a brief delay, officers were able to handcuff the defendant and search the duffel bag. *Id.* at 316–17. The defendant moved to suppress the evidence discovered from the warrantless search of his bag. *Id.* at 317.

The Third Circuit held that the search was permissible because "there remained a sufficient possibility that [the defendant] could access a weapon in his bag," noting that while the defendant was handcuffed and guarded by two police officers, he was still standing and could access the bag if he "dropped to the floor." *Id.* at 321. That Court also

14

acknowledged that the defendant "was subject to an arrest warrant for armed bank robbery, and that he was arrested in a public area near some 20 innocent bystanders, as well as at least one suspected confederate who was guarded only by unarmed hotel security officers." *Id.* Surely underlying the Court's reference to the number of bystanders and a possible confederate is a realization that an arrest scene may be more fluid—and an arrestee less secure—when officers must not only maintain custody of the arrestee, but also stay vigilant of the crowd and any efforts by confederates to interfere with the arrest. While the presence of bystanders on its own might not result in an unsecured arrestee, the court in *Shakir* viewed all of the circumstances together and concluded that there was more than a remote possibility that the defendant could have accessed his bag and retrieved a weapon. *Id.*

Again, the case before us is distinguishable in key ways. Davis was lying on his stomach with his hands cuffed behind his back. While the arrest in *Shakir* was "very low key," *id.* at 316, Davis had a gun pointed at him. Other than the three police officers on the scene, Davis was alone. Rather than being able to drop to the floor to access his bag, like the defendant in *Shakir* could have, Davis would have had to jump up from the ground or contort his body in order to snatch the backpack away from Richardson.

In concluding that the search of Davis's backpack was lawful, the district court found that Richardson, who had just witnessed Davis commit a number of crimes, had "probable cause to arrest [Davis] for those crimes and to search his person and items within his immediate control." J.A. 149. But while the district court correctly noted that a search incident to a lawful arrest is an exception to the warrant requirement, it simply concluded that the search of Davis's backpack was lawful because it was within his "immediate

control"—defined as "the area from within which [an arrestee] might gain possession of a weapon or destructible evidence." *Chimel*, 395 U.S. at 763. Under *Gant*, however, an item is not within a person's immediate control if it is unreasonable to believe that they can access it.

In considering the search-incident-to-arrest exception, the proper question before the district court was whether it was reasonable for Richardson to believe that Davis could access his backpack at the time of the search. The district court committed legal error when it ruled on the motion to suppress without applying the relevant law. And the record reflects that Davis was secure and not within reaching distance of his backpack when Richardson searched it. As such, there is no factual basis for finding that this was a proper search incident to arrest under the first *Gant* holding. Because the district court erred in concluding that the search of the backpack was a lawful search incident to arrest, we reverse and remand with instructions to grant Davis's motion to suppress.

## B.

We must also address the warrantless search of Davis's vehicle. Davis argues that the district court erred in finding the search was permissible under another exception to the warrant requirement, the automobile exception. *See United States v. Kelly*, 592 F.3d 586, 589 (4th Cir. 2010). He further contends that the search of his car was unlawful because it was not a proper search incident to his arrest (the first *Gant* holding) and it was not

reasonable to believe that evidence of his crime of arrest would be discovered in the vehicle (the second *Gant* holding). We consider each exception in turn.

Under the automobile exception, the police can search a vehicle without first obtaining a warrant if the vehicle "is readily mobile and probable cause exists to believe it contains contraband."[8] *Kelly*, 592 F.3d at 589 (quoting *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) (per curiam)). "Probable cause exists when 'the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found.'" *United States v. Patiutka*, 804 F.3d 684, 690 (4th Cir. 2015) (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)). "The principal components of a determination of . . . probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to . . . probable cause." *United States v. Brookins*, 345 F.3d 231, 235–36 (4th Cir. 2003) (quoting *Ornelas*, 517 U.S. at 696).

In finding that the officers had "ample probable cause" to search Davis's vehicle, the district court relied on Davis's "flight from the traffic stop, his ensuing arrest, [and] the recovery of the cash and the materials in the backpack." J.A. 149. The government points to the same evidence in arguing that probable cause existed. But without the evidence recovered from Davis's backpack, probable cause for the vehicle search rests solely on

---

[8] The "readily mobile" inquiry asks whether an automobile "is 'being used on the highways' or is 'readily capable of such use' rather than, say, 'elevated on blocks.'" *Kelly*, 592 F.3d at 591 (quoting *California v. Carney*, 471 U.S. 386, 392–93, 394 n.3 (1985)). Davis does not dispute that his vehicle was readily mobile.

Davis's flight, his subsequent arrest, and the cash discovered on his person. These facts present a closer question than the one answered by the district court, and taken together, they cannot support the warrantless search that occurred.

While Davis's flight coupled with the cash in his pockets may have given the officers an *articulable suspicion* that evidence of a crime could be located in the vehicle, it did not give them *probable cause* to circumvent the Fourth Amendment's warrant requirement and search the vehicle. Yet "the automobile exception requires that the police have probable cause (not just reasonable articulable suspicion) to search." *Patiutka*, 804 F.3d at 691. Could a fleeing individual with cash in his pockets have evidence of some crime in his vehicle? Perhaps. But without more supporting facts available to tip the scales from "articulable suspicion" to "probable cause," the more accurate answer is, "[w]ell perhaps, but not probably." *United States v. Lyles*, 910 F.3d 787, 790–91, 794 (4th Cir. 2018) (affirming grant of motion to suppress for lack of probable cause where police obtained warrant to search defendant's entire house for evidence of marijuana possession based on finding three marijuana stems in his trash). Accordingly, because the district court should have suppressed the evidence discovered in the backpack, it also should have concluded that the officers did not have probable cause to search the vehicle without a warrant.

While the district court based its decision solely on the automobile exception, we "may affirm on any grounds apparent from the record." *United States v. Ali*, 991 F.3d 561, 571 (4th Cir. 2021) (internal quotation marks omitted). But the warrantless search of the automobile fares no better under the search-incident-to-arrest exception. As discussed

above, the search-incident-to-arrest exception allows police to "search a vehicle incident to a recent occupant's arrest" so long as "the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence *of the offense of arrest*." *Gant*, 556 U.S. at 351 (emphasis added).

At the time of the search, Davis was handcuffed and in Boyd's custody. While officers were searching the vehicle Davis had driven into a yard, Davis himself was being searched near the police cars in the cul-de-sac. And after searching Davis, the officers sat him on the ground before eventually placing him in the back of a police car. Nothing in the record suggests that Davis was not secured or that he was anywhere near his vehicle at the time of its search.

Further, the record reflects that while Davis was initially pulled over because of his window tint, he was ultimately arrested for traffic violations, as well as "speeding to elude arrest and resisting an officer."[9] J.A. 149. It certainly was not reasonable to believe that Davis's vehicle contained evidence of any of *those* crimes.[10] *See, e.g.*, *United States v.*

---

[9] Under North Carolina's speeding-to-elude-arrest offense, "[i]t shall be unlawful for any person to operate a motor vehicle on a street, highway, or public vehicular area while fleeing or attempting to elude a law enforcement officer who is in the lawful performance of his duties." N.C. Gen. Stat. § 20-141.5(a). And North Carolina's offense of resisting arrest prohibits any person from "willfully and unlawfully resist[ing], delay[ing] or obstruct[ing] a public officer in discharging or attempting to discharge a duty of his office." *Id.* § 14-223.

[10] The government does not contend otherwise, instead focusing on the drugs in the backpack and the gun tossed from the car. *See* Response Br. at 22–23. Putting aside that the search of the backpack was unconstitutional and that the search of the car occurred before the officers learned of the gun, the crimes of arrest were indisputably not drug- or gun-related, whatever the officers' suspicions may have been.

*Beene*, 818 F.3d 157, 161–62 (5th Cir. 2016) (finding that the defendant's vehicle would not contain evidence of his crime of resisting arrest); *United States v. Vinton*, 594 F.3d 14, 25 (D.C. Cir. 2010) ("Had [the defendant] been arrested merely for speeding . . . , *Gant*'s evidentiary rationale obviously would not have authorized a subsequent search because under the circumstances it would have been very unlikely that evidence relevant to [that] traffic offense[] would be found inside his car."); *United States v. Lopez*, 567 F.3d 755, 758 (6th Cir. 2009) (finding a police officer's warrantless search of the defendant's vehicle unreasonable because "[t]here was no reason to think that the vehicle contained evidence of the offense of arrest, since that offense was reckless driving"); *see also State v. Noel*, 779 S.E.2d 877, 885 (W. Va. 2015) (finding the warrantless search of the defendant's vehicle unlawful under *Gant* because "it was unreasonable to believe that [the defendant's] vehicle contained evidence of the offense of his arrest, *i.e.*, fleeing with reckless indifference."). As such, we reverse.

IV.

The thicket of nuanced exceptions to the warrant requirement may appear, at times, confusing and unnavigable. Indeed, law enforcement may feel that courts are missing the forest for the trees—focusing myopically on minor details and ignoring the big picture, which in this case involves a man in a vehicle with tinted windows fleeing a routine traffic stop and then transporting a backpack on foot into a swamp. Surely, some may say, the

officers were entitled to infer that that man was up to no good, and that, at the very least, his backpack could have evidence of a crime greater than a traffic violation.

But that is the wrong question. As Justice O'Connor once rightly pointed out, exceptions to the warrant requirement are *not* "police entitlement[s]" to searches. *Thornton*, 541 U.S. at 624 (O'Connor, J., concurring). Rather, they are narrow "exception[s]" which must be "justified" by specific circumstances. *Id.* In the words of Chief Justice Roberts, quoting Justice Stewart, "the warrant requirement is 'an important working part of our machinery of government,' not merely 'an inconvenience to be somehow "weighed" against the claims of police efficiency.'" *Riley v. California*, 573 U.S. 373, 401 (2014) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 481 (1971)). It is the crucial role of courts to ensure that the government conducts searches of property in which individuals have a reasonable expectation of privacy only when permitted by a warrant or when one of a handful of limited exceptions to the warrant requirement applies.

For the foregoing reasons, we hold that the district court erred when it concluded that the warrantless search of Davis's backpack and vehicle were permissible. Accordingly, we reverse and remand for entry of an order granting the motion to suppress, and for any other proceedings consistent with this opinion.

*REVERSED AND REMANDED*