**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 24-4604

UNITED STATES OF AMERICA,

Plaintiff - Appellant,

v.

MILTON CHRISTOPHER ALLEN,

Defendant - Appellee.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Terrence W. Boyle, District Judge. (5:24-cr-00136-BO-RJ-1)

Argued: January 30, 2026                    Decided: April 28, 2026

Before DIAZ, Chief Judge, and NIEMEYER and HEYTENS, Circuit Judges.

Reversed by published opinion. Judge Niemeyer wrote the opinion, in which Judge Diaz and Judge Heytens joined.

**ARGUED:** Sarah Elizabeth Nokes, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellant. Colin Alexander Shive, THARRINGTON SMITH LLP, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Michael F. Easley, Jr., United States Attorney, David A. Bragdon, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellant. F. Hill Allen, IV, THARRINGTON SMITH LLP, Raleigh, North Carolina, for Appellee.

NIEMEYER, Circuit Judge:

In arresting Milton Allen for interfering with a police investigation being conducted near midnight in downtown Raleigh, North Carolina, Raleigh police officers placed Allen on the ground, removed two bags he was wearing, and secured both his hands and feet. While Allen remained on the ground but was still squirming, one officer searched Allen's bags and found two loaded firearms, illegal drugs, scales, cash, and related items. Allen was charged with the illegal possession of firearms and drugs.

Allen filed a motion to suppress the evidence obtained from his bags, arguing that the warrantless search did not qualify as a lawful "search incident to arrest" because he had already been secured at the time of the search and therefore could not have accessed the bags to create a safety risk to the officers. The government argued otherwise. It also argued that the items in Allen's body bags would, in any event, have inevitably been discovered pursuant to established policies for inventory searches. The district court, however, granted Allen's motion to suppress.

Because we conclude that, under established policies for inventory searches, the evidence would inevitably have been lawfully discovered, we reverse the district court's order.

I

Near midnight on October 16, 2023, Raleigh police officers were conducting an investigation of a stolen vehicle in downtown Raleigh. They had detained two people and were in the process of searching a car when Milton Allen, while on a bicycle, interfered

with the investigation. He rode around the officers and patrol cars and also weaved in and out of the crime scene, causing the officers to become distracted and concerned that Allen might ambush them while riding in and out and around the area. Their concern was enhanced by the fact that they observed Allen wearing cross-body bags. For some 10 to 20 minutes, the police officers repeatedly ordered Allen to back away from the area, but Allen continued riding through the scene. While doing so, he also impeded traffic as he rode his bike against the flow of traffic and, from time to time, stopped in the middle of the street.

The police officers undertook to arrest Allen for obstructing the investigation, resisting their orders to back away from the scene, and impeding the flow of traffic. To effect the arrest, two officers ordered Allen to come to them, but he disobeyed their orders and biked by them a couple more times, without stopping. At one point, as Allen swerved close to one of the officers, that officer attempted to grab him by the arm, but Allen slipped through her grasp. Another officer, however, grabbed Allen from behind and pulled him off the bicycle. A scuffle then ensued, in which Allen resisted arrest. He bit one of the officer's fingers and kicked one of the patrol vehicles, damaging a panel on the passenger side. The scuffle lasted for some five minutes, and four additional officers were needed to subdue Allen. As they were attempting to subdue him, Allen tried to reach toward the core of his body, which officers perceived as an attempt to reach for a weapon. The officers ultimately took Allen to the ground and placed him in the "recovery position" — a position on Allen's side to preserve an open airway — and one of the officers searched him. In doing so, the officer removed two cross-body bags that Allen was wearing across his chest

3

and placed them about two to three feet away. As Allen continued to resist arrest, the officers handcuffed him with his hands behind his back and secured his ankles with leg irons. Even then, Allen continued his efforts to resist.

While Allen continued to squirm, officers searched the nearby bags and uncovered two loaded pistols, 11.1 grams of cocaine, 11.2 grams of marijuana, 68 fentanyl dosage units, several unknown substances, a digital scale, several cell phones, and $1,956.16 in cash. The officer's written report of the arrest explained that the search of Allen was conducted "incident to arrest per our policy and state law as well as our policy for inventory search."

When later explaining the applicable inventory search policies to the district court, two Raleigh police officers testified that, under Raleigh Police Department policy, officers are required to conduct an inventory search of *every* arrestee's personal belongings before the arrestee's entry into the Wake County Detention Center so as to prevent the arrestee from bringing weapons or contraband into the facility. The Raleigh Police Department's written policy, a copy of which they provided to the court, stated in relevant part:

Inventory Search

Wake County Detention Center

Any personal property in possession of an arrestee must be searched before entry into the Wake County Detention Center per the Wake County Detention Center's policy. This search shall be documented on a Body-worn camera/MVR or an inventory search form. The officer shall tag the Body-worn camera/MVR video as an Inventory Search. If the Wake County Detention Center refuses to accept the arrestee's property, this property shall be stored by the Raleigh Policy Department's Evidence Unit for safekeeping.

4

In addition, a sergeant with the Wake County Sheriff's Office, who was responsible for arrestee processing at the Wake County Detention Center on the date Allen was taken into custody, testified that the Detention Center also had an inventory search policy to conduct an inventory search of *every* arrestee brought into the facility. He explained that the policy required the search of all personal items, including bags — providing examples such as purses, backpacks, computer bags, and luggage. And if the detainee were not to post bond, the Detention Center staff would have to conduct another search of "all" property, "input [it] into the system for inventory purposes," and then place it into storage. He explained further that, in addition, a K9 officer was required to make a daily round of the storage facility to sniff for any missed contraband, drugs, or guns. The sergeant testified that the staff were required to follow this process for "every single" arrestee that comes into the facility, and that, in practice, this process uncovered contraband, drugs, and guns on arrestees or in their personal belongings "[a]lmost on a daily basis."

After the Raleigh police officers arrested Allen, he complained of chest pain and difficulty breathing, and emergency medical services transported him to the WakeMed Hospital. After release from the hospital, he was transported to Wake County Detention Center, where he was taken into custody by Detention Center staff.

Based on the contents of his cross-body bags, Allen was charged with possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c); and possession with intent to distribute fentanyl, methamphetamine, and cocaine base, in violation of 21 U.S.C. § 841.

Allen filed a motion to suppress the evidence recovered from his cross-body bags, arguing that the search was warrantless and that the evidence was not obtained pursuant to a lawful search incident to arrest, relying on *United States v. Davis*, 997 F.3d 191, 193 (4th Cir. 2021). The government opposed the motion, arguing that the search was permissible even under the holding in *Davis*. It explained that since Allen had continued to resist the officers and the bags were within a few feet of his immediate control, "there was a reasonable possibility that the defendant could have retrieved the bag once they tried to move him," thereby justifying the search. The government also argued that under applicable inventory search policies of both the Raleigh Police Department and the Wake County Detention Center, the contents of the bags would have inevitably been lawfully discovered upon Allen's transfer to the detention center, such that the motion to suppress should have been denied.

The district court granted Allen's motion to suppress, ruling that the search of the bags incident to Allen's arrest was impermissible under *Davis*, as, at the time of the search, Allen had been secured with both handcuffs and ankle restraints and was surrounded by officers. The court also rejected the government's inevitable discovery argument, finding that the government failed to demonstrate, by a preponderance of the evidence, that searches under the inventory search policies had sufficient particularity such that law enforcement would have legally uncovered the items in the cross-body bags.

From the district court's suppression order dated November 1, 2024, the government filed this interlocutory appeal. *See* 18 U.S.C. § 3731.

6

II

First, the government contends — only to preserve the issue for Supreme Court review — that Allen's cross-body bags were lawfully subject to a warrantless search incident to arrest and that *Davis*, on which the district court relied in finding the search unlawful, improperly extended the Supreme Court's ruling in *Arizona v. Gant*, 556 U.S. 332 (2009), to a non-vehicular situation.

In *Davis*, we held that a warrantless search incident to arrest of a backpack that Davis was carrying while on foot violated his Fourth Amendment rights because Davis had been secured with handcuffs at the time of the search. 997 F.3d at 198. We understood *Gant* to hold that "police officers can conduct warrantless searches of non-vehicular containers incident to a lawful arrest '*only when the arrestee is unsecured* and within reaching distance of the [container] at the time of the search.'" *Davis*, 997 F.3d at 197 (emphasis added) (quoting *Gant*, 556 U.S. at 343). Addressing the safety concerns of police officers, we explained that:

> As to whether the bag was within Davis's reaching distance, we acknowledge that he dropped the bag next to him before lying down. By the time of the search, however, Davis was handcuffed — severely curtailing the distance he could reach. We need not recount the various acrobatic maneuvers Davis would have needed to perform to place the backpack within his reaching distance at the time of the search. It is enough to say that, at the moment in question, the handcuffed and face-down Davis had severely restrained mobility and was not within reaching distance of the backpack next to him.

*Id*. at 198. Relying on these facts, we concluded that "there is no factual basis for finding that this was a proper search incident to arrest under the first *Gant* holding. Because the district court erred in concluding that the search of the backpack was a lawful search

7

incident to arrest," we reversed and remanded with instructions to grant Davis's motion to suppress. *Id*. at 200.

As to the application of *Gant*, we note that the Supreme Court *also* held that a warrantless search incident to an arrest could be lawfully conducted in the vehicular context if "it [was] reasonable to believe the vehicle contain[ed] evidence of the offense of arrest." 556 U.S. at 351. When applying *Gant* to a non-vehicular search, such as here, the question would then arise whether the officers could have reasonably believed that Allen's bags contained "evidence of the offense of arrest," an issue that we did not address in *Davis* because Davis's initial arrest was a traffic stop, and that the district court here did not address. More generally, the government maintains in this case that *Gant* does not invalidate a warrantless search "of a backpack or cross-body bag an arrestee [on foot] is wearing" during his arrest, arguing that "[Allen's] bags should be subject to search pursuant to lawful arrest even if they are no longer within reach at the times of search." (Citing *United States v. Robinson*, 414 U.S. 218, 235–36 (1973); *Gustafson v. Florida*, 414 U.S. 260, 262, 266 (1973)).

Because *Davis* was decided after the cases relied on by the government, we will not address the government's point, leaving it "as a preserved argument," as the government characterized it. *See McMellon v. United States*, 387 F.3d 329, 332–34 (4th Cir. 2004) (en banc) (holding that one panel may not overrule the holding of another).

III

For its main argument on appeal, the government contends that the undisputed evidence showed that "Allen's bags would have been [lawfully] searched in inventory searches by Raleigh Police and the Wake County Detention Center" and that therefore the evidence recovered from Allen's bags would inevitably have been lawfully obtained for use at trial. It argues that the district court erred in finding that (1) the government was required to introduce a written copy of Wake County Detention Center's policy and (2) the Wake County Detention Center's inventory search policy did not, in any event, have "enough particularity" to limit officer discretion. The government maintains that a written copy of the Wake County Detention Center's policy was not required and that both that policy and the Raleigh Police Department policy adequately limited officer discretion as to whether to search, when to search, and what to search. Because the evidence in Allen's bag would have been *lawfully* obtained by searches under either of the inventory search policies, it argues that the court erred in granting Allen's motion to suppress.

As a general matter, the government may not use evidence at trial that was obtained by a search in violation of the Fourth Amendment. *See United States v. Doyle*, 650 F.3d 460, 466 (4th Cir. 2011); *Mapp v. Ohio*, 367 U.S. 643 (1961). The exclusion of such evidence is a sanction intended to deter unlawful police conduct and to encourage searches and seizures that comply with the Fourth Amendment. *See United States v. Calandra*, 414 U.S. 338, 347 (1974). Evidence illegally obtained, however, may nonetheless be used if it "would have 'ultimately or inevitably' [been] discovered . . . by 'lawful means.'" *United States v. Bullette*, 854 F.3d 261, 265 (4th Cir. 2017) (quoting *Nix v. Williams*, 467 U.S.

9

431, 444 (1984)).  And "lawful means" include "an inevitable search falling within an exception to the warrant requirement, *such as an inventory search*, that would have inevitably uncovered the evidence in question."  *Id*. (emphasis added) (citing *United States v. Allen*, 159 F.3d 832, 841 (4th Cir. 1998)).

Inventory searches are "a well-defined exception to the warrant requirement," *Illinois v. Lafayette*, 462 U.S. 640, 643 (1983), and serve a variety of legitimate government interests, including safeguarding an owner's property; preventing claims of lost, stolen, or vandalized property; and protecting the safety of law enforcement officers, *see Colorado v. Bertine*, 479 U.S. 367, 372 (1987).  And when an inventory search is conducted with standardized criteria that limit officer discretion, those legitimate government interests "outweigh[] the individual's Fourth Amendment interests."  *Id*.

"For the inventory search exception to apply, the search must have been conducted according to standardized criteria, such as a uniform police department policy, and performed in good faith."  *United States v. Matthews*, 591 F.3d 230, 235 (4th Cir. 2009) (cleaned up).  To qualify, the "standardized criteria must sufficiently limit a searching officer's discretion to prevent his search from becoming 'a ruse for a general rummaging in order to discover incriminating evidence.'"  *Id.* (quoting *Florida v. Wells*, 495 U.S. 1, 4 (1990)).  Thus, a lawful inventory search policy must be specific as to who is to be the subject of an inventory search, when the person must be searched, and what is to be searched, such that an officer would readily understand what he must do to comply with the policy.

In this case, there were two inventory search policies that were applicable, each of which required officers to search Allen's bags and each of which limited the officers' discretion, thereby preventing arbitrary rummaging for evidence. The Raleigh Police Department policy required, following an arrest, the search of *every arrestee's* personal belongings, meaning "any personal property in possession of [the] arrestee." It required that the search be documented and that the property, if not accepted by the Wake County Detention Center, be stored in the Raleigh Police Department Evidence Unit "for safekeeping." Under this policy, officers were not left with any discretion as to whom to search, when to search, and what to search.

The Wake County Detention Center search policy also covered personal property taken from Allen, as Allen was taken to the Detention Center for intake. Under the Detention Center policy, again, *every arrestee* taken to the Detention Center had to be searched, and each search had to include all personal property of the person, including purses, backpacks, computer bags, and luggage. If the person were not to post bond and therefore would be taken into custody, the Wake County Detention Center policy required that the person be searched again. The arrestee's personal property would then be catalogued and placed into storage at the Detention Center, where it would be subjected to a K9 sniff for missed contraband, drugs, or guns. The testimony given by Wake County Detention Center personnel was that "every single" arrestee entering the Detention Center was subject to this policy. Thus, like the Raleigh Police Department policy, this policy applied to every arrestee in Allen's circumstances and all property in such an arrestee's

11

possession. For that reason, a search under this policy was not subject to the discretion of the officers conducting it.

The evidence that the government presented to the district court at the suppression hearing describing these two inventory search policies was undisputed.

Nonetheless, the district court refused to accept the inventory search exception in this case, apparently for three reasons. First, the court disagreed philosophically with the inventory search exception, which it noted was a court-made doctrine. The district court referred to the exception as "Chief Justice Burger's legacy. . . . One of my favorite cliches of the law: inevitable discovery. . . . Yeah. Okay. Inevitable discovery is going nowhere." Second, the court faulted the government for "not provid[ing] a copy of [the Wake County Detention Center's] policy," concluding that "[l]acking [a copy of] the applicable guidelines, the Court [could not] say that the bags would have inevitably been searched." And third, the court found that the testimony about the policy lacked "enough particularity" to make a showing of "standardized criteria [that would] limit a searching officer's discretion to prevent his search from becoming 'a ruse for a general rummaging in order to discover incriminating evidence.'" (Quoting *United States v. Clarke*, 842 F.3d 288, 294 (4th Cir. 2016)).

First, we need not dwell long in pointing out that the district judge's personal views of the inventory search exception, which was developed and is currently applied by the Supreme Court, is of no moment. We lower courts are all bound by the Supreme Court's doctrines.

12

Second, we also note that there is no requirement that the inventory search policy be proved with *written* evidence. We have made it abundantly clear that the "government need not provide a written inventory policy to prove that a law enforcement agency conducts its inventory searches according to routine and standard procedures." *Bullette*, 854 F.3d at 266; *see also United States v. Seay*, 944 F.3d 220, 223 (4th Cir. 2019) ("The officers' testimony explaining the inventory procedure was sufficient to satisfy our precedent; the government was not required to produce a written policy"). Thus, a policy "may be proven by reference to either written rules and regulations *or* testimony regarding standard practices." *Matthews*, 591 F.3d at 235 (emphasis added) (cleaned up).

Third and finally, we fail to understand the observation that the policies here lacked "enough particularity." The evidence with respect to each policy explicitly showed that the policies applied to *every* arrestee and to *all property* possessed by the arrestee, without exception. Surely, this meant that Allen's bags were required to be searched and would have been searched for inventory purposes and that their contents would inevitably have been lawfully discovered.

Thus, regardless of whether the Raleigh police officers' search of Allen's bags was a valid or invalid "search incident to arrest" under our decision in *Davis*, the evidence showed that the contents of the bag would inevitably have been lawfully discovered pursuant to the applicable inventory search policy that required the search of Allen's bags during his intake processing at the Wake County Detention Center.

Accordingly, we reverse the district court's order of November 1, 2024.

REVERSED

13