**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-4524**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JUROTHER LEE ALSTON, JR.,

Defendant - Appellant.

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  N. Carlton Tilley, Jr., Senior District Judge.  (1:17-cr-00446-NCT-1)

Argued:  September 20, 2019                           Decided:  October 24, 2019

Before MOTZ, KING, and DIAZ, Circuit Judges.

Affirmed by published opinion.  Judge Motz wrote the opinion, in which Judge King and Judge Diaz joined.

**ARGUED:** Leza Lee Driscoll, LAW OFFICE OF LEZA LEE DRISCOLL, PLLC, Raleigh, North Carolina, for Appellant.  Terry Michael Meinecke, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee. **ON BRIEF:** Matthew G.T. Martin, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.

DIANA GRIBBON MOTZ, Circuit Judge:

Jurother Lee Alston, Jr., entered a conditional guilty plea to possession of a firearm in furtherance of a drug crime, reserving the right to appeal the district court's order denying his motion to suppress. Alston now appeals that order. For the reasons that follow, we affirm.

I.

We recount the facts related to the suppression motion in the light most favorable to the Government. *See United States v. Norman*, 935 F.3d 232, 235 (4th Cir. 2019).

On December 11, 2017, Captain Raheem Aleem of the Durham County Sheriff's Office saw Alston run a red light. Driving behind Alston, Captain Aleem activated his blue emergency lights, but Alston failed to stop. Aleem watched Alston reach deep under the passenger seat of his car — so deep that he briefly disappeared from Aleem's view. Captain Aleem suspected that Alston was reaching for a gun. Looking back at Aleem and continuing to reach down, Alston slowly drove into a parked car and came to a stop.

Captain Aleem, concerned that Alston might try to flee, pulled up next to Alston's car. When asked why he ran a red light, Alston explained that he was distracted. Aleem next asked why Alston was reaching deep under his seat, and Alston replied that he had dropped his cell phone. Captain Aleem was skeptical; he heard a woman's voice in an ongoing phone call with Alston over the car's speakers and noticed Alston holding his phone in his left hand despite reaching under the seat with his right.

2

Aleem responded, "Bro, you mighty nervous, you got anything else in the vehicle that you shouldn't have?" Alston replied, "All I got is this little bag of weed." He held up a small bag of marijuana and, at Aleem's request, tossed it into the officer's vehicle.

Captain Aleem then asked Alston for his driver's license, which Alston admitted was suspended. Aleem asked if Alston "could call someone else to drive the vehicle," and Alston called his mother to do so. Captain Aleem parked and approached Alston. Noticing that Alston remained very nervous, Aleem assured him that he did not intend to take him to jail and "just want[ed] [him] to be honest." The two made small talk until Alston's mother arrived about five minutes later.

Alston's mother joined Captain Aleem outside Alston's car, while Alston remained seated inside. Aleem told Alston that besides the small bag of marijuana, he "still needed to find out whatever else [Alston] had in the vehicle." He added, "I've been straightforward with you, and I need for you to be honest and straightforward with me." Alston then handed over a black bag containing marijuana, a digital scale, and small plastic bags. He told Aleem it was "all he had."

Captain Aleem thanked Alston but continued to suspect that Alston had been reaching for a gun and sought to have him turn it over. Aleem told Alston and his mother, "I'm going to need to get the heater" (a slang term for a firearm). Alston replied, "[A]re you going to take me to jail?" Captain Aleem assured him, "I need you to be honest with me and I will not take you to jail today." Alston paused, looked at his mother and Aleem, and admitted, "It is underneath the passenger seat." Aleem then asked Alston to exit the vehicle.

3

Captain Aleem searched Alston's person and found nothing. He then searched the passenger side of the vehicle and retrieved a loaded Glock firearm from under the seat. Aleem called dispatch to check the gun's serial number and learned that the gun was stolen. He returned to Alston and reiterated that he did not intend to take Alston to jail.

As he was talking to Alston, however, Captain Aleem received a call from Durham County Deputy James Gryder, a member of a joint task force with the Federal Bureau of Investigation. Based on an independent tip, the task force was separately investigating whether Alston, a convicted felon, illegally possessed a firearm, and a confidential source had alerted Gryder that Alston was in a traffic stop. Deputy Gryder asked Aleem if he was with Alston and if Alston had a gun. Captain Aleem confirmed that he was with Alston and that Alston did have a gun. Deputy Gryder told Aleem to detain Alston until task force officers arrived, and Aleem did so. Captain Aleem informed Alston's mother that he did not intend to take Alston to jail, but that he did not know what would happen when the other officers got there.

Deputy Gryder and other task force officers soon arrived at the scene. Captain Aleem told Gryder that he had promised Alston and his mother that he would not arrest Alston, but Gryder responded that Alston was "on both state and federal probation" and that the task force "would be taking over." Task force officers then arrested Alston.

## II.

A grand jury indicted Alston on counts of possession of marijuana with intent to distribute, possession of a firearm in furtherance of that crime, possession of a firearm by

a felon, and possession of a stolen firearm. Alston moved to suppress all evidence obtained in the stop.

The district court granted Alston's motion in part and denied it in part. The court found Captain Aleem to be "a very credible witness" and "a very sincere person" and credited his testimony. The court determined that the initial stop was permissible because Alston had run a red light, "disappeared out of sight as if he were reaching for something or to hide something," attempted to evade Aleem until hitting a parked car, and gave a dubious account of dropping his phone. Reviewing Captain Aleem's words and conduct at the start of the stop, the court found that he had not been coercive during that time. Accordingly, the court held that Alston's confession about the first bag of marijuana was voluntary and denied the suppression motion for evidence obtained through that point in the stop.

Given Captain Aleem's assurances that he did not intend to arrest Alston, however, the district court found that Alston's subsequent admissions were involuntary. The court emphasized that Aleem, a community liaison officer and former school resource officer who preferred alternative programs to jailing offenders, was sincere. But the court concluded that a reasonable person in Alston's position would understand Captain Aleem's statements to mean that law enforcement — not only Aleem, but also any other officers — would not arrest him if he confessed. These assurances, the court concluded, overbore Alston's will, and the court suppressed his statements about the black bag and the gun.

But the district court refused to exclude the gun itself. The court found that Alston's admission about and presentation of the first bag of marijuana gave Captain Aleem

5

probable cause to search the car. The court held that even if Alston had not admitted to possession of the gun, it "would have inevitably been found because there was probable cause to search." The court did not, however, expressly find that the police would have conducted the search, only that there was probable cause to do so.

Alston entered a conditional guilty plea to the sole charge of possession of a firearm in furtherance of a drug crime, reserving his right to appeal the suppression ruling. The district court sentenced Alston to sixty months' imprisonment and five years' supervised release.

On appeal, Alston challenges the district court's denial of his motion to suppress "all derivative evidence resulting from his statements." Opening Br. at 17. We review the district court's legal conclusions de novo and its factual findings for clear error, construing the evidence in the light most favorable to the Government. *United States v. McGee*, 736 F.3d 263, 269 (4th Cir. 2013).

III.

Alston expressly poses three arguments. All are meritless.

First, he claims that his entire interaction with Captain Aleem amounted to custodial interrogation and that because Aleem failed to read him his rights, under *Miranda v. Arizona*, 384 U.S. 436 (1966), the district court should have excluded all evidence obtained from the stop, including the gun. Of course, the exclusionary rule bars admission of the nontestimonial physical fruits of statements obtained in violation of *Miranda* when those statements are involuntary, and statements obtained in violation of *Miranda* are

6

presumptively involuntary. *See United States v. Nichols*, 438 F.3d 437, 442 (4th Cir. 2006). The district court *agreed* with Alston that most of his statements were involuntary and so excluded them. The court admitted the derivative evidence, including the gun, *not* because it was the fruit of voluntary statements, but because the court found that the inevitable discovery exception to the exclusionary rule rendered the derivative evidence admissible.

Second, Alston contends that all of his statements were involuntary. The district court held that Alston's first statements were voluntary, as Captain Aleem had not yet made any promises or otherwise said anything coercive, and we find no error in that holding. As noted above, the district court held that the statements admitting possession of the gun were involuntary and so excluded those statements; they are not at issue before us.

Third, Alston maintains that Captain Aleem impermissibly prolonged their interaction by exceeding the scope of the stop, in violation of *Rodriguez v. United States*, 135 S. Ct. 1609 (2015). This argument fails because Alston's admission to possessing the first bag of marijuana gave Captain Aleem the "reasonable suspicion . . . demanded to justify detaining" Alston and investigating further. *Id.* at 1615.

IV.

Strangely, neither Alston nor the Government directly addresses the inevitable discovery doctrine. We find it necessary to consider the issue because it provides the sole basis for the district court's denial of Alston's motion to suppress the gun. *Cf. United States v. Uzenski*, 434 F.3d 690, 707 (4th Cir. 2006) (considering an issue that "neither

7

party directly addresse[d]," but which was necessary to reach in determining whether the district court properly denied a suppression motion).

Although the district court held that Captain Aleem discovered the gun as a result of Alston's involuntary statements, the court refused to suppress it. Evidence discovered by illegal means, like the gun here, is not admissible if obtained "by exploitation of that illegality," but it is admissible if discovered "by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States*, 371 U.S. 471, 488 (1963) (quoting JOHN MACARTHUR MAGUIRE, EVIDENCE OF GUILT 221 (1959)).

Such derivative evidence is admissible pursuant to the inevitable discovery doctrine only "[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means." *Nix v. Williams*, 467 U.S. 431, 444 (1984). "A finding of inevitable discovery necessarily rests on facts that did not occur," but "by definition the occurrence of these facts must have been likely, indeed 'inevitable,' absent the government's misconduct." *United States v. Allen*, 159 F.3d 832, 840 (4th Cir. 1998).

Inevitable discovery demands that the prosecution prove by a preponderance of the evidence: first, that police legally *could* have uncovered the evidence; and second, that police *would* have done so. *See id.* ("We have no doubt that [the officer] *could* have used the dog, but whether she *would* have presents an entirely different question."); *see also, e.g.*, *United States v. Pelletier*, 700 F.3d 1109, 1116 (7th Cir. 2012); *United States v. Heath*, 455 F.3d 52, 55 (2d Cir. 2006); *United States v. Almeida*, 434 F.3d 25, 29 (1st Cir. 2006). We address each requirement in turn.

8

## A.

To rely on the inevitable discovery doctrine, the Government first must prove that police could have used "lawful means" to discover the illegally obtained evidence. *Nix*, 467 U.S. at 444. "'Lawful means' include an inevitable search falling within an exception to the warrant requirement . . . that would have inevitably uncovered the evidence in question." *United States v. Bullette*, 854 F.3d 261, 265 (4th Cir. 2017).

One such exception to the warrant requirement is the automobile exception, which the district court invoked. The automobile exception allows police to search a vehicle if they have probable cause to believe it contains contraband. *Maryland v. Dyson*, 527 U.S. 465, 467 (1999) (per curiam); *United States v. Kelly*, 592 F.3d 586, 589 (4th Cir. 2010). An officer's detection of marijuana creates such probable cause. *See United States v. Palmer*, 820 F.3d 640, 650 (4th Cir. 2016). When police have probable cause, the automobile exception permits "the search of every part of the vehicle . . . that may conceal the object of the search." *United States v. Ross*, 456 U.S. 798, 825 (1982).

The district court expressly held that the automobile exception gave Captain Aleem authority he *could* have exercised to lawfully search the car. The court reasoned that Alston's traffic violation justified Captain Aleem's initial stop, and Alston's attempt to evade Aleem while reaching deep beneath the seat created adequate suspicion for further investigative detention. Then, by admitting to possessing marijuana and showing it to Captain Aleem — which Alston did voluntarily, before Aleem made any promises — Alston gave Aleem "probable cause to search the car for further marijuana." Finally, if Captain Aleem had searched the car based on that probable cause, he inevitably would have

9

found the gun.  We agree with the district court that these facts establish that Captain Aleem could have uncovered the gun by lawful means.[1]

B.

We turn to whether it was inevitable that Captain Aleem *would* have conducted a search for the gun, based on the information Aleem had before Alston made the statements that the district court found involuntary.

Although the court held that Captain Aleem developed the necessary probable cause and therefore *could* have searched Alston's car, and that "the firearm would have been found *had he* performed that search," the court never expressly held that Captain Aleem *would* have conducted the search.  We must answer this question because, as noted above, discovery is not inevitable unless the Government proves that police not only *could* have lawfully obtained the evidence but also *would* have done so.  *See Nix*, 467 U.S. at 444; *Allen*, 159 F.3d at 840.

The inevitable discovery exception "involves no speculative elements but focuses on demonstrated historical facts." *Nix*, 467 U.S. at 444 n.5.  Although a finding that police inevitably would have conducted the lawful search "necessarily rests on facts that did not

---

[1] The only authority Alston offers in response to this holding is *United States v. Graham*, 686 F. App'x 166 (4th Cir. 2017).  In addition to being unpublished and so lacking in precedential value, *see* Local Rule 36(b); *United States v. Cortez*, 930 F.3d 350, 362 n.2 (4th Cir. 2019), *Graham* is inapposite here.  There, we rejected the Government's post hoc attempt to leverage plain-view evidence of an open container violation as probable cause to justify a warrantless vehicle search, chiefly because the record did not demonstrate that the searching officer was even aware of that evidence at the time of the search.  *Graham*, 686 F. App'x at 173–74.  Here, by contrast, it is undisputed that Alston showed Captain Aleem the marijuana well before any search.

occur," such a finding nonetheless requires adequate "evidentiary support." *Allen*, 159 F.3d at 840. Thus, a question too close to decide on the evidentiary record may require remand. *Cf. Murray v. United States*, 487 U.S. 533, 543 (1988) (Scalia, J.) (vacating and remanding an application of the related independent source doctrine where the district court "did not . . . explicitly find that the agents would have sought a warrant" and the inferences drawn from the record were not "clear enough to justify the conclusion" that the doctrine applied).

But this is not such a case. Here, the record demonstrates that even absent Alston's admissions, Captain Aleem inevitably would have searched the car and found the gun. Aleem repeatedly testified that his highest priority in conducting the traffic stop was to find the gun he believed to be in the car and to get it off the street. As soon as he saw Alston reaching deep beneath the passenger seat while attempting to evade him, Captain Aleem grew suspicious that Alston was "reaching for a weapon." After Alston produced the marijuana and *before* Alston admitted to possessing a gun, Aleem announced that he "need[ed] to get the heater." He explained that "getting the heater off the street [was] more pressing than taking [Alston] to jail." Once Captain Aleem suspected that there was a gun in the car, nearly every interaction he had with Alston was directed to finding that gun. Concluding that discovery was inevitable here requires no tenuous "string of conjecture." *See United States v. Thomas*, 955 F.2d 207, 209–10 (4th Cir. 1992). We need not stack any shaky inferences about what Alston and Captain Aleem would have done in order to

11

reach this conclusion. *See Allen*, 159 F.3d at 840–43. In this case, the evidence that the search was inevitable jumps off the pages of the record.[2]

The record makes clear that before Alston made any involuntary admissions, Captain Aleem believed that Alston possessed a gun, had the probable cause necessary to search the car, and intended to find the gun. The record thus establishes that Captain Aleem not only could have searched the car but also would have done so. Accordingly, the district court did not err in admitting the gun.

V.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.

---

[2] Alston emphasizes that Captain Aleem promised not to arrest him, and we accept the district court's findings that Aleem's promises were sincere. In another case, there well might be irreconcilable tension between an officer's determination to obtain a gun and his repeated assurances that he would not arrest the suspect. In this case, however, there is not; we need not decide whether Captain Aleem, despite his sincere promises, would have arrested Alston because Deputy Gryder and the task force officers assuredly would have; indeed they did so. Independently of Aleem, Deputy Gryder learned that Alston was in a traffic stop. Deputy Gryder informed — not asked — Captain Aleem that the task force would arrest Alston; Gryder explained that Alston was "on both state and federal probation and due to the nature of the [offense], that [the task force] would be taking over" and "arrest [Alston] instead of allowing him to leave." Captain Aleem repeatedly testified that "once [he] got the call" from Gryder, "[e]verything was frozen in time," and that task force officers "took charge of everything." The task force's pursuit of Alston "is a critical intervening circumstance that is wholly independent" of Aleem's promises not to arrest Alston. *Utah v. Strieff*, 136 S. Ct. 2056, 2063 (2016). The record indicates, and Alston does not dispute, that Gryder and the task force would and in fact did arrest Alston.