**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 23-4040**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

RUDOLPH DANIEL MIFFIN, JR.,

Defendant - Appellant.

**No. 23-4105**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JERMAINE DARNELL JOHNSON, a/k/a Jermaine Darrell Johnson, a/k/a Buck Johnson,

Defendant - Appellant.

Appeals from the United States District Court for the Eastern District of Virginia, at Richmond.  M. Hannah Lauck, District Judge.  (3:21-cr-00029-MHL-2; 3:21-cr-00029-MHL-1)

Argued:  March 5, 2024                                        Decided:  August 23, 2024

Before DIAZ, Chief Judge, and RICHARDSON and RUSHING, Circuit Judges.

Affirmed by unpublished opinion.  Chief Judge Diaz wrote the opinion, in which Judge Richardson and Judge Rushing joined.

**ARGUED:**  I. Scott Pickus, LAW OFFICES OF I. SCOTT PICKUS, ESQUIRE, Glen Allen, Virginia; Timothy George McCormick, CHRISTIAN & BARTON LLP, Richmond, Virginia, for Appellants.  Stephen Eugene Anthony, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.  **ON BRIEF:**  Jessica D. Aber, United States Attorney, Richmond, Virginia, Jacqueline Bechara, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

2

DIAZ, Chief Judge:

We consider on appeal the district court's denial of Jermaine Darnell Johnson's and Rudolph Miffin, Jr.'s motions to suppress certain evidence the police seized during a traffic stop.[1] Johnson and Miffin contend that police officers impermissibly prolonged the stop, in violation of the Fourth Amendment, by subjecting Johnson, the driver, to a pat down and search of a bag on his person, in which they found a handgun and drug paraphernalia. Johnson and Miffin also assert that the officers violated the Fourth Amendment by prolonging the traffic stop to search the vehicle, Miffin's person, and a similar bag on his person. During those searches, the officers found another handgun, an empty extended handgun magazine, drugs, and more drug paraphernalia.

After the district court denied their motions to suppress,[2] Johnson and Miffin entered conditional guilty pleas. Johnson pleaded guilty to being a felon in possession of a firearm, and possession with intent to distribute a controlled substance. Miffin pleaded guilty to possession with intent to distribute a controlled substance. Both, however, reserved the right to appeal the claims that they raised in their suppression motions. The defendants

---

[1] The district court also denied Miffin's motion to suppress certain incriminating statements he made to federal agents while he was being transferred from the county jail, where he was detained following the traffic stop, as moot. *United States v. Johnson*, No. 3:21-cr-29, 2022 WL 2373700, at *24–25 (E.D. Va. June 30, 2022). Miffin doesn't appeal that decision. In addition, the district court granted in part Johnson's motion to suppress certain statements he made to the officers after he was handcuffed and before he was read his *Miranda* warnings. *Id.* at *23. The government doesn't appeal that decision.

[2] Miffin moved to adopt Johnson's motion to suppress, which the district court granted. *Id.* at *8.

3

bring those appeals now, challenging the searches of Johnson's and Miffin's persons, their bags, and the vehicle. Relying mainly on the search incident to arrest and automobile exceptions to the Fourth Amendment, we affirm.

## I.

Because, as relevant here, the district court denied Johnson's and Miffin's suppression motions, we recount the facts in the light most favorable to the government, the prevailing party below. *United States v. Slocumb*, 804 F.3d 677, 681 (4th Cir. 2015) (cleaned up).

## A.

Officer O.T. Broaddus encountered Johnson and Miffin during two stops in the early morning hours of September 1, 2020. The first stop was generally routine: while patrolling an area of Henrico County following a string of "vandalization[s] and burglaries," Broaddus "came across a vehicle that was parked [in a dark area] . . . that had [its] lights on." *United States v. Johnson*, No. 3:21-cr-29, 2022 WL 2373700, at *2 (E.D. Va. June 30, 2022). The illuminated vehicle "stuck out to" Broaddus, prompting him to "conduct[] a records check of the vehicle's license plate." *Id.*

While the check revealed that the license plate was linked to a different color vehicle, it didn't indicate that any warrants were on file or contain any other information of concern. Still, Broaddus left his police cruiser and approached the vehicle, where he saw Miffin "sitting alone in the passenger seat with the door open." *Id.* Broaddus and Miffin talked about "criminal activity in the area" before Johnson "walked up to the car."

4

*Id.* Broaddus then had a similar conversation with Johnson. Once the conversations ended, Broaddus left Johnson and Miffin—who both struck Broaddus as "cooperative and cordial"—and continued his patrol. *Id.*

The second stop, occurring only a few minutes later, is the subject of this appeal. There, Broaddus "saw a car pass him with an unlit light above its rear license plate." *Id.* at *3. "Because the unlit light constituted an equipment violation," *id.*, Broaddus pursued the vehicle, activating his emergency blue lights once he caught up to it. The vehicle traveled another block before "stopping near an access road adjacent to [a] major intersection." *Id.* "[G]iven the time of day, cars passed only intermittently, and the area was dark." *Id.*

Broaddus once more approached the vehicle alone and observed Johnson sitting in the driver's seat with Miffin in the passenger's seat. He realized at this point "that this was the same car" and occupants he had encountered during the initial stop. *Id.* Broaddus acknowledged as much to Johnson before informing him of the traffic infraction. Johnson noted that he was aware of the unlit tag light but "expressed concern" to Broaddus about the stop because Johnson was "on federal papers, a euphemism for federal supervision." *Id.* (cleaned up). Broaddus assured Johnson "that he should not have much to be concerned about." *Id.* (cleaned up).

All the same, Broaddus asked Johnson and Miffin for identification, explaining, "When I stop a car, I need to identify both occupants." *Id.* Both men complied. Broaddus also requested the vehicle's registration, but "Johnson informed Officer Broaddus that he could not find [it] because the car belonged to someone else." *Id.* Instead, Johnson gave

5

Broaddus a vehicle inspection report, which Broaddus accepted because it "reprinted the car's vehicle identification number." *Id.*

With the paperwork in hand, Broaddus "returned to his police cruiser to check [the] records." *Id.* He confirmed that "Johnson was on federal supervision, although [the check] did not specify the nature of the underlying offense or provide any detail about Johnson's criminal history." *Id.* The check also instructed that Broaddus was "not to arrest [Johnson] unless a crime ha[d] occurred." *Id.* (cleaned up). As for Miffin, Broaddus "received an alert classifying Miffin as a known member of the Crips Southwest Virginia gang," which Broaddus knew, "based on his training and experience, . . . had a reputation for violence." *Id.* at *4. But this alert qualified that "[s]tanding alone," Miffin's gang affiliation "d[id] not furnish grounds for the search and seizure of any individual, vehicle, or dwelling." *Id.*

About five minutes into the stop, and as Broaddus was conducting the records check, Sergeant Patrick English "arrived on the scene." *Id.* Though English wasn't called to assist Broaddus, it "was normal procedure" for one officer to "check on" another officer during a traffic stop. *Id.* English, standing outside Broaddus's police cruiser, asked Broaddus about the stop. As Broaddus was responding, English "interrupted and stated, 'There's a lot of movement going around [in the car],'" *id.*, and began walking toward the vehicle. Though English didn't describe this movement any further, Broaddus "interpreted Sergeant English's reaction as 'unusual and suspicious because when Sergeant English said there was a lot of movement in that vehicle, and walked off, that meant that he observed something that may have been an officer safety issue.'" *Id.* (cleaned up).

6

English approached the passenger's window, and Johnson leaned across Miffin to "volunteer[] [to English] that he was putting on his 'slides,' or slip-on sandals." *Id.* English still noted "that there was reaching going on outside his view." *Id.* (cleaned up).

Broaddus, meanwhile, "continued to conduct the records check," *id.*, learning that the license plate on the vehicle was linked to a different vehicle. "This discovery gave Officer Broaddus some concerns that [the] vehicle may have been stolen," although he "recognized that the issue with the license plates may have been due to DMV issues or administrative issues related to the COVID-19 pandemic." *Id.* (cleaned up). Broaddus completed the records check and returned to the vehicle, "ask[ing] Johnson to exit the car so that they could speak privately about the issue with the license plates." *Id.* Though Johnson initially "voiced his desire to wait inside the car until his wife arrived," *id.*, he exited the car after Broaddus told Johnson that he could have the car towed if Johnson didn't comply.

Broaddus next asked Johnson if he had any weapons, and Johnson, after some back and forth, "indicated that he did not possess any weapons." *Id.* at *5. To confirm, Broaddus asked if he could pat Johnson down. Though Johnson at first raised his arms as if to comply, he quickly dropped them and stated, "'C'mon, bro, don't do me like that, bro.'" *Id.* Johnson then "squared up,"[3] *id.*, and told Broaddus that he didn't want Broaddus to search him.

---

[3] Broaddus testified that "it's more or less a danger sign," J.A. 133:21–22, to officers when a suspect "squares up"—"a form of aggression" where "someone [is] getting ready to make an action that potentially is dangerous," J.A. 134:4–7. Johnson and Miffin object

Broaddus removed his hands from Johnson but noticed what he suspected was a marijuana flake on Johnson's shirt. *Id.* He asked Johnson what the flake was, and Johnson replied, "That's a problem." Broaddus BWC 10:34.[4] Though Broaddus told Johnson that he wasn't "under arrest," he explained that he was "detaining" Johnson because he had "marijuana on [him]," which is "illegal, okay?" *Johnson*, 2022 WL 2373700, at *5. But "[m]oments later," Sergeant English handcuffed Johnson's hands behind his back. *Id.* As Broaddus then led Johnson away, he asked whether there was more marijuana on Johnson's person or in the car, and Johnson admitted that "the car's center console contained a 'blunt,' or a marijuana cigar." *Id.*

After learning that the car contained more marijuana (about thirteen minutes into the stop), Broaddus "asked Johnson for a second time whether Johnson possessed any weapons because he was concerned that Johnson was armed and dangerous and that he might have additional marijuana on his person." *Id.* Before waiting for Johnson's reply, but "because of those concerns," Broaddus "opened a zipped cross-body bag draped across one of Johnson's shoulders, resting flush against Johnson's stomach." *Id.* Broaddus shined his flashlight inside the bag "and discovered a Glock 19" and "individually packaged narcotics." *Id.*

---

to this description, but we defer to the district court's factual determinations, *United States v. Palmer*, 820 F.3d 640, 653 (4th Cir. 2016) (cleaned up), which were based on both Broaddus's testimony and his body worn camera footage.

[4] Broaddus's body worn camera footage was entered into evidence and reviewed during the suppression hearings.

8

As the officers tried to remove the bag from Johnson's shoulder and maneuver it around his cuffed hands, J.A. 138:3–8, Johnson began calling out to Miffin, shouting, "Hey, Juvie, they goddamn got the Glick out the bag, bro,"[5] J.A. 138:18–23, 139:12–17; Broaddus BWC 14:29–14:50. This outburst prompted several responses. First, Broaddus cut the strap of the bag and walked away from Johnson to secure it in a police vehicle. Broaddus BWC 15:00–15:20. Broaddus then returned to Johnson, read him his *Miranda* warnings, and searched Johnson's person, including his pockets, finding cash and other drug paraphernalia.

Second, English instructed Officer Trevor Holmes, "who had arrived on the scene . . . and had been talking with Miffin, to 'detain' Miffin." *Johnson*, 2022 WL 2373700, at *6. Following Holmes's commands, Miffin exited the vehicle, and Holmes told him that he "was 'not under arrest,'" but "was simply 'being detained right now.'" *Id.* Still, "Holmes handcuffed Miffin, patted him down, and . . . read him his *Miranda* rights." *Id.*

With Johnson also secured, Broaddus approached Miffin and informed him "that they 'found some stuff in the car,'" *id.* (cleaned up), and asked him whether he had any drugs on his person, Broaddus BWC 22:25–23:08. Miffin, on whom Holmes had done a pat-down search, responded "that he did not have anything on his person, that he did not

---

[5] The district court explained that a "'Glick' refers to a Glock loaded with an extended magazine." *Johnson*, 2022 WL 2373700, at *6 n.4.

want to be searched, and that there was no reason to search him." *Johnson*, 2022 WL 2373700, at \*6.

Without searching Miffin, Broaddus left him handcuffed with Holmes, and searched the defendants' vehicle with English. Broaddus found a Taurus 9mm pistol under Miffin's seat, while English "recovered the blunt from the car's center console, which also contained a digital scale and empty extended magazines for a handgun." *Id.* And "[i]n the front seat area, the officers discovered a large quantity of baking soda, a common cutting agent for narcotics, and several bags in the backseat that appeared to contain narcotics." *Id.* Broaddus then returned to Miffin, searching his person "and a cross-body bag strapped to his person similar to the one strapped to Johnson's." *Id.* at \*7. During these searches, Broaddus found "additional individually packaged bags containing suspected narcotics." *Id.*

## B.

Johnson and Miffin were each charged with a separate count of possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1), and with a combined count of possession with intent to distribute heroin and cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). Johnson and Miffin moved to suppress evidence that they argued was obtained as the result of unreasonable warrantless searches incident to unreasonable warrantless seizures, in violation of the Fourth Amendment.

The district court held an evidentiary hearing on the defendants' motions, in which it heard testimony from Broaddus and English and reviewed several officers' body worn camera footage. The court then heard separate oral argument on the motions after a round

10

of supplemental briefing.  It also allowed the parties to file a second round of supplemental briefing after the argument.

As relevant here, the district court denied Johnson's and Miffin's motions to suppress the evidence obtained during the searches of Johnson's crossbody bag and the vehicle.

To begin, the court found that the traffic stop was "lawful at its inception because Officer Broaddus witnessed a traffic violation, giving him probable cause to initiate the traffic stop." *Id.* at *8.  And it held that Broaddus didn't impermissibly prolong the traffic stop given that he was "investigat[ing] the issues pertaining to the car's registration and license plates" and that "these actions did not extend the stop longer than reasonably necessary for Officer Broaddus to complete his initial objectives." *Id.* at *11.  In so holding, the district court rejected the defendants' argument that Broaddus unreasonably extended the stop beyond those initial objectives by conducting the pat-down frisk of Johnson and by conducting the later searches because those were justified under several exceptions to the Fourth Amendment.

The district court, for example, determined that Broaddus had reasonable suspicion that Johnson was armed and dangerous, justifying his initial protective frisk under *Terry v. Ohio*, 392 U.S. 1 (1968).  Then, as to the search of Johnson's crossbody bag, the district court found that it was justified as a search incident to Johnson's arrest for the traffic violation.  Finally, as to the search of the vehicle, the district court found that the seized evidence would have been inevitably discovered because the vehicle—lacking proper license plates—was inoperable.

11

After the district court's decision, Johnson and Miffin waived indictment and entered conditional guilty pleas, while reserving the right to appeal the issues raised in their suppression motions. Johnson pleaded guilty to being a felon in possession of a firearm and to possession with intent to distribute a controlled substance, and the district court imposed a sentence of ninety-six months' imprisonment followed by three years' supervised release. Miffin pleaded guilty to possession with intent to distribute a controlled substance, and the district court imposed a sentence of eighty-five months' imprisonment, also followed by three years' supervised release.

This appeal followed.

## II.

Before us, Johnson and Miffin bring two challenges. First, they argue that Broaddus unreasonably extended the traffic stop by patting Johnson down and searching his crossbody bag, so the district court erred by not suppressing the evidence seized during that search. They next contend that the officers unreasonably extended the stop by searching the defendants' vehicle, so the district court again erred by not suppressing the evidence seized during that search. We disagree on both fronts but will address each argument in turn.[6]

---

[6] Johnson and Miffin concede that Broaddus had probable cause to initiate the stop and don't challenge the length of the stop while Broaddus investigated the license plate issue.

12

A.

We'll begin with the defendants' challenge to the pat down of Johnson's person and search of Johnson's crossbody bag. In reviewing the district court's denial of a suppression motion, "we review legal conclusions de novo and factual findings for clear error." *United States v. Pulley*, 987 F.3d 370, 376 (4th Cir. 2021) (cleaned up). And we "evaluate[] the evidence in the light most favorable to the government." *United States v. Perry*, 92 F.4th 500, 509 (4th Cir. 2024) (cleaned up). We conclude that neither the pat down nor the search violated the defendants' Fourth Amendment rights because the former constituted a protective *Terry* frisk, and the latter constituted a permissible search incident to arrest.

1.

The Fourth Amendment guides our analysis. It protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *United States v. Gist-Davis*, 41 F.4th 259, 263 (4th Cir. 2022) (quoting U.S. Const. amend. IV). And the right extends to investigatory stops and associated protective frisks "that fail to comply with the criteria articulated in *Terry v. Ohio*." *Id.* (citation omitted).

An officer who has conducted a lawful traffic stop may conduct a protective frisk if he "has a reasonable suspicion that one of the automobile's occupants is armed" to ensure "the officer's protection and the safety of everyone on the scene." *United States v. Robinson*, 846 F.3d 694, 696 (4th Cir. 2017). Reasonable suspicion "is a less demanding standard than probable cause," and "considerably less [demanding] than a preponderance of the evidence." *Gist-Davis*, 41 F.4th at 264 (cleaned up).

13

Still, reasonable suspicion isn't toothless: It requires that an officer "be able to articulate more than an inchoate and unparticularized suspicion or hunch" that an individual is armed and dangerous. *Id.* (cleaned up). The officer may consider "a host of factors" in doing so, *United States v.* George, 732 F.3d 296, 299 (4th Cir. 2013), and we evaluate those factors under "the totality of the circumstances, giving due weight to common sense judgments reached by [the] officer[] in light of [his] experience and training," *Gist-Davis*, 41 F.4th at 264 (cleaned up).

The district court summarized the "host of factors" that it considered in its reasonable suspicion calculus and assigned weight to each. *Johnson*, 2022 WL 2373700, at *13 (citing factors and cases). It assigned, for example, "substantial weight" to "the information [Broaddus] received from the records check," as well as the movement English "observed . . . within the car." *Id.* at *15. The district court then assigned only "some weight" to the fact that (1) the stop occurred "in a high-crime area," *id.* at *14, (2) the stop occurred "at 1:25 a.m. in a dark location," *id.* at *15, and (3) Johnson was "unusual[ly]" nervous and "evasive," *id.* at *16. Viewing the facts in the light most favorable to the government and deferring to the district court's credibility determinations, we see no reason to disturb the district court's reasoning and agree that, taken in their totality, these circumstances allowed Broaddus to reasonably suspect that Johnson was armed and dangerous.

Turning first to the records check, Broaddus learned from the check that "Johnson was on federal supervision and that Miffin was a reported member of the Crips," a gang with "a reputation for violence." *Id.* at *15; *see also United States v. Holmes*, 376 F.3d

14

270, 278 (4th Cir. 2004) (crediting suspect's criminal history and violent gang affiliation as relevant factors in reasonable suspicion analysis).  Broaddus, moreover, "reasonably suspected he was dealing with a possible stolen vehicle considering that the records check associated the license plates on [the d]efendants' car with another vehicle." *Johnson*, 2022 WL 2373700, at *15 (cleaned up).

As for the movement in the vehicle, English not only "abruptly interrupt[ed]" Broaddus to note the movement, but also "promptly approach[ed] the vehicle to get a better view" of the movement.  *Id.*  The district court credited Broaddus's testimony that English's behavior "possibly signal[ed] an officer safety issue," *id.* (cleaned up), given that "[s]uspicious movements such as [Johnson's] . . . 'can be taken to suggest that the suspect may have a weapon,'" *id.* (quoting *George*, 732 F.3d at 299) (cleaned up).

Finally, for the three other factors, the district court was right to acknowledge that, alone, they were "minimally probative," *id.* at *14; *see also id.* at*15–16, but that they could still be considered within the reasonable suspicion framework.  This court has allowed the crime rate where the stop occurred, *United States v. Mitchell*, 963 F.3d 385, 391 (4th Cir. 2020), the early morning hours in which the stop occurred, and a suspect's demeanor to play some role within that framework, *George*, 732 F.3d at 299–300.

In this case, the stop occurred in a higher-crime area.  Indeed, Broaddus was patrolling there because of recent criminal activity in the vicinity.  And the stop occurred in the early hours of the morning, which "may alert a reasonable officer to the possibility of danger." *Id.* at 300.  Then, Johnson became less compliant as Broaddus sought to clarify the records check—declining to exit the vehicle to discuss the license plate issue with

15

Broaddus, "squaring up" to Broaddus when he did exit the vehicle, and resisting Broaddus's questions about whether he possessed any weapons.[7]

Johnson and Miffin resist this conclusion, arguing that the officers and Johnson "were laughing about the situation," so "[c]learly," they weren't "in fear for [their] safety." Appellants' Br. at 16. And they contend that "[t]he stop was for a traffic infraction," during which Broaddus "never voiced any concern for his safety or that of the other police officers then present." *Id.* at 18.

But that Broaddus had cordial interactions with Johnson doesn't mean he didn't reasonably suspect that Johnson was armed. Nor does our standard require an outward expression of that suspicion. *See United States v. Branch*, 537 F.3d 328, 337 (4th Cir. 2008) (explaining that "the lawfulness of a *Terry* stop turns not on the officer's actual state of mind at the time the challenged action was taken, but rather on an objective assessment of the officer's actions" (cleaned up)).

There's no question that Broaddus (1) initiated the stop in the early morning hours in a higher-crime area, (2) learned that Johnson was under federal supervision, that Miffin was in a violent gang, that the vehicle had mismatched plates, and that there was movement in the vehicle, and (3) observed Johnson become more agitated and less compliant as he

---

[7] The district court rightly identified "the complex reality of citizen-police relationships in many cities," including Richmond, Virginia, so that "Johnson's hesitations" (or evasive behavior) merited less weight in its reasonable suspicion analysis. *Johnson*, 2022 WL 2373700, at *16.

tried to unravel the plate issue.  Under our standard, we're satisfied that reasonable suspicion existed, justifying Broaddus's protective frisk of Johnson.

2.

We address next Johnson and Miffin's argument that Broaddus impermissibly prolonged the stop by searching Johnson's crossbody bag.  The district court held that the search was conducted as a valid search incident to arrest for the traffic infraction, even though the search preceded the arrest.  *Johnson*, 2022 WL 2373700, at *17.  We agree.

A search incident to arrest "is a traditional exception to the warrant requirement of the Fourth Amendment," in which "law enforcement officers [who] have probable cause to make a lawful custodial arrest . . . may—incident to that arrest and without a warrant— search the arrestee's person and the area within his immediate control."  *United States v. Currence*, 446 F.3d 554, 556 (4th Cir. 2006) (cleaned up).  An officer may do so, even before an official arrest is made, to "remove any weapons that [a suspect] might seek to use in order to resist arrest or effect his escape," and "to prevent the concealment or destruction of evidence."  *Id.*  But as with the reasonable suspicion standard, this exception isn't limitless.

The Supreme Court narrowed this exception in *Arizona v. Gant* by holding that, in the vehicular context, police can "search a vehicle incident to a recent occupant's arrest *only* when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search."  556 U.S. 332, 343 (2009) (emphasis added).  This court in *United States v. Davis* then extended that holding to reach "non-vehicular containers that were not on the arrestee's person."  997 F.3d 191, 197 (4th Cir. 2021).

17

Like this case, the "non-vehicular container[]" in *Davis* was a bag, so the main question was whether the suspect "could have accessed the backpack at the time of the search." *Id.* at 198 (cleaned up). The answer there was no, where the suspect had dropped his backpack and was laying on the ground with his handcuffed hands behind his back, and where the officer had just had "his service weapon drawn." *Id.* Under those circumstances, "there [was] no doubt that Davis was secured and not within reaching distance of his backpack," *id.*, when the officer searched it.

Johnson and Miffin would apply *Davis*'s holding here. Though the defendants don't dispute that Broaddus had probable cause to arrest Johnson for the traffic infraction,[8] *see* Reply Br. at 8, they argue that Johnson, like Davis, "had been placed in handcuffs with his hands behind him," Appellants' Br. at 20. They also repeat that "[a] threat to officers' safety Johnson was not." *Id.*

But the defendants overlook critical differences between *Davis* and this case. To begin, Broaddus had reasonably determined that Johnson *was* a threat to officer safety by the time he searched Johnson's crossbody bag. And Broaddus had also observed what he suspected was marijuana on Johnson's clothing after the initial pat down. Though

---

[8] Johnson and Miffin don't raise a temporal challenge to the search incident to arrest or otherwise argue that too much time elapsed between the traffic infraction and Broaddus's search of Johnson's crossbody bag. *See Currence*, 446 F.3d at 557 ("Temporally, searches incident to arrest must be substantially contemporaneous with the arrest, and although a search can occur before an arrest is made, a search may not precede an arrest and serve as part of its justification." (cleaned up)).

18

marijuana was decriminalized in Virginia at the time,[9] that state policy did not dispel the "indisputable nexus between drugs and guns," *United States v. Harris*, No. 21-4657, 2023 WL 5165273, at *1 (4th Cir. Aug. 11, 2023) (quoting *United States v. Sakyi*, 160 F.3d 164, 169 (4th Cir. 1998)), which "creates a reasonable suspicion of danger to the officer," *Sakyi*, 160 F.3d at 169.

Johnson and Miffin also gloss over that Johnson's bag, at the time it was searched, remained on his person and that Johnson himself, though handcuffed, "still could walk around somewhat freely," *United States v. Ferebee*, 957 F.3d 406, 419 (4th Cir. 2020). And with the crossbody bag "resting flush against Johnson's stomach," *Johnson*, 2022 WL 2373700, at *5, the officers could have "reasonably" believed that Johnson could access its contents, *Ferebee*, 957 F.3d at 419.

These facts contrast with those in *Davis*, where the arrestee was face-down on the ground with his hands handcuffed behind his back and where the arrestee's bag was no longer under his control. In *Davis*, we also acknowledged that "an arrest scene may be more fluid—and an arrestee less secure—when officers must not only maintain custody of the arrestee, but also stay vigilant of . . . any efforts by confederates to interfere." 997 F.3d at 200. Here, Miffin—a known member of a violent gang—was also on the scene, so the officers had to balance their awareness of him, and his access to the bag, as well.

Taking these circumstances together, we won't disturb the district court's conclusion that the search of Johnson's bag was a valid search incident to his arrest.

---

[9] Va. Code Ann. § 18.2-250.1(A) (repealed effective July 1, 2021).

B.

Johnson and Miffin's final argument is that the officers unconstitutionally prolonged the stop by conducting a warrantless search of the vehicle. Though the district court found that the officers would have inevitably discovered the evidence during an inventory search, we instead affirm because the officers could search the vehicle under the automobile exception to the Fourth Amendment.[10]

1.

The automobile exception to the Fourth Amendment's warrant requirement provides that "if a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment . . . permits police to search the vehicle without more." *United States v. Kelly*, 592 F.3d 586, 589 (4th Cir. 2010) (cleaned up).[11] "[O]nce police have [the requisite] probable cause, they may search every part of the vehicle and its contents that may conceal the object of the search." *Id.* at 590 (cleaned up). And we have recognized that "[a]n officer's detection of marijuana creates such probable cause." *United States v. Alston*, 941 F.3d 132, 138 (4th Cir. 2019) (cleaned up).

---

[10] Though the district court admitted the evidence under a different theory, we may "affirm [the district court's decision] on any ground supported by the record." *United States v. Perez*, 30 F.4th 369, 374 (4th Cir. 2022) (cleaned up).

[11] In *Kelly*, we explained that the automobile "exception applies as long as a car is 'readily mobile' in the sense that it is being used on the highways or is readily capable of such use." 592 F.3d at 591 (cleaned up). Thus, it's of no moment that Johnson and Miffin were handcuffed—and unable to drive the vehicle—at the time of the search because the vehicle itself could have been driven.

Broaddus had probable cause to search the vehicle. Before he conducted the search, Broaddus (1) saw a flake of marijuana on Johnson's shirt, (2) learned from Johnson that there was more marijuana in the vehicle, and (3) found a gun in Johnson's crossbody bag. What's more, Broaddus heard Johnson call out to Miffin that they had found the "Glick" in his bag, raising the possibility that there were other concealed firearms.

Johnson and Miffin challenge the application of the automobile exception on two grounds. First, they repeat that marijuana was decriminalized then in Virginia, so it couldn't be "contraband" for purposes of the exception. And second, they argue that because the district court suppressed some statements Johnson made to the police after he was handcuffed but before he was given his *Miranda* warnings (that there was a "blunt" in the vehicle's center console), the evidence seized based on those comments should also be suppressed as "fruit of the poisonous tree." Reply Br. at 14 (cleaned up). We're unmoved by either argument.

On the defendants' first point, they've provided no caselaw explaining why an illegal substance (even a decriminalized one) like marijuana doesn't still constitute contraband. While Virginia may have made marijuana possession a civil offense, the drug remains illegal under state law, and its possession is still a crime under federal law.[12] *See*

---

[12] We contrast the automobile exception with the search incident to arrest exception. The former requires only probable cause that the object of the search contain "contraband," *Kelly*, 592 F.3d at 589, while the latter requires a lawful arrest, which in turn must be supported by probable cause that an arrestee committed a "crime," *see Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) (allowing for arrest if "an officer has probable cause to believe that an individual has committed even a very minor *criminal* offense" (emphasis added)). So, while marijuana—decriminalized then by the Virginia legislature—might not

21

*United States v. Castillo Palacio*, 427 F. Supp. 3d 662, 672 (D. Md. 2019) (recognizing that "possession of marijuana in any amount remains illegal," even after its decriminalization in Maryland, such that marijuana constitutes contraband (quoting *Robinson v. State*, 152 A.3d 661, 680, 683 (Md. 2017))); *People v. Looby*, 68 V.I. 683, 698 (2018) (concluding that although decriminalized in the Virgin Islands, possession of marijuana remains unlawful and is considered contraband).  Because marijuana possession is still illegal, even if subject to only a civil penalty in Virginia, it remains "contraband" for purposes of the automobile exception.[13]  *See Davis*, 997 F.3d at 201 (allowing search under automobile exception if probable cause exists that "contraband" *or* "evidence of a crime will be found" (cleaned up)).

On the defendants' second point, we've long recognized that physical or "derivative evidence obtained as a result of an unwarned statement that was voluntary under the Fifth Amendment is never fruit of the poisonous tree."  *United States v. Sterling*, 283 F.3d 216, 219 (4th Cir. 2002) (cleaned up).  That principle applies here, where officers obtained a

---

be evidence of a *crime*, it could nonetheless qualify as *contraband*.  *See, e.g.*, *United States v. Pascual*, 502 F. App'x 75, 78 n.3 (2d Cir. 2012) (explaining that "the 'scope of the search authorized [by the automobile exception] is broader' than that authorized in searches incident to arrest" (quoting *Gant*, 556 U.S. at 347)).

[13] The defendants' citation to *Commonwealth v. Branch*, No. 0132-22-1, 2022 WL 2202895, at *4 (Va. Ct. App. June 21, 2022), doesn't change our minds.  The court merely "[a]ssum[ed] without deciding that decriminalized, unlawful marijuana" was "considered 'contraband' for purposes of the Fourth Amendment" before holding that "the circumstances [there] did not provide the officers with probable cause that other contraband or evidence of a crime would be found in the vehicle."  *Id.*  Such circumstances existed here, including evidence of additional marijuana.

voluntary statement, though it was "in technical violation of *Miranda*." *Correll v. Thompson*, 63 F.3d 1279, 1290 (4th Cir. 1995).

Such a technical—unlike a constitutional—violation doesn't inherently "taint," *id.*, the physical evidence that law enforcement seized, so it needn't be suppressed. And, in any event, Broaddus had other indicia of contraband, such as the marijuana flake and the unsuppressed statement about the gun, to justify searching the vehicle under the automobile exception.[14]

III.

For these reasons, the district court's judgment is

*AFFIRMED.*

---

[14] Because we affirm the district court's refusal to suppress the evidence seized in the vehicle under the automobile exception rather than the inevitable discovery doctrine, we don't address the defendants' argument that the doctrine wouldn't support the admissibility of evidence found on Miffin's person after the search of the vehicle. *See, e.g.*, Reply Br. at 19. If Miffin had argued that the search of his person was not lawful even in light of evidence discovered under the automobile exception, it would have been unavailing. Law enforcement officers lawfully detained Miffin and lawfully conducted the preceding searches, so they "inevitably would have searched the car and found the gun," *Alston*, 941 F.3d at 139.