**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

―――――――――――

**No. 24-4609**

―――――――――――

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

MATTHEW SCOTT ROCCO,

        Defendant - Appellant.

―――――――――――

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Michael Stefan Nachmanoff, District Judge.  (1:24-cr-00025-MSN-1)

―――――――――――

Submitted:  September 2, 2025                    Decided:  September 9, 2025

―――――――――――

Before THACKER and HEYTENS, Circuit Judges, and KEENAN, Senior Circuit Judge.

―――――――――――

Affirmed by unpublished per curiam opinion.

―――――――――――

**ON BRIEF:** Zachary A. Deubler, CARMICHAEL ELLIS & BROCK, PLLC, Alexandria, Virginia, for Appellant.  Erik S. Siebert, United States Attorney, Zoe Bedell, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

―――――――――――

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Matthew Scott Rocco appeals his convictions for receiving child pornography, in violation of 18 U.S.C. § 2252(a)(2), (b)(1), and possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4), (b)(2). Rocco challenges only the district court's denial of his motion to suppress evidence from a cellular telephone that law enforcement seized during its execution of a valid search warrant for Rocco's residence. According to Rocco, law enforcement violated the Fourth Amendment and the "spatial constraint" the Supreme Court pronounced in *Bailey v. United States*, 568 U.S. 186, 199, 201 (2013), when his probation officer directed him to return home so he would be present while law enforcement executed the warrant. Finding no error, we affirm.

"We review factual findings underlying a motion to suppress for clear error and legal determinations de novo." *United States v. Davis*, 94 F.4th 310, 316 (4th Cir. 2024). Where, "as here, the district court denies the motion to suppress, this [c]ourt construes the evidence in the light most favorable to the government." *United States v. Fall*, 955 F.3d 363, 370 (4th Cir. 2020) (internal quotation marks and brackets omitted).

Moreover, clear error occurs only "when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Cox*, 744 F.3d 305, 308 (4th Cir. 2014) (internal quotation marks and ellipses). Thus, "[i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety," *Anderson v. Bessemer City, N.C.*, 470 U.S. 564, 573-74 (1985), "we will not reverse the district court's finding simply because we have become convinced that

2

we would have decided the fact differently," *United States v. Stevenson*, 396 F.3d 538, 542 (4th Cir. 2005).

The Supreme Court has explained that "[t]he touchstone of the Fourth Amendment is reasonableness, and . . . is determined by assessing, on the one hand, the degree to which [law enforcement] intrudes upon an individual's privacy and, on the other, the degree to which [a search or seizure] is needed for the promotion of legitimate governmental interests." *United States v. Knights*, 534 U.S. 112, 118-19 (2001) (internal quotation marks omitted); *see Bailey v. United States*, 568 U.S. 186, 192-99 (2013) (conducting same balancing analysis to determine legality of law enforcement's seizure of defendant's person). In conducting this balancing analysis, courts must "examin[e] the totality of the circumstances." *Knights*, 534 U.S. at 118 (internal quotation marks omitted).

In *Knights*, for instance, the Supreme Court was faced with determining the reasonableness of law enforcement's warrantless search of a probationer subject to a general search condition that required the defendant to "submit to a search 'by any probation officer or law enforcement officer.'" *Id.* at 116. In conducting its balancing analysis to decide the defendant's motion to suppress seized evidence, the Supreme Court explained that a court must "examin[e] the totality of the circumstances, with the probation search condition being a salient circumstance."[1] *Id.* at 118 (internal quotation marks and citation omitted).

---

[1] Courts consistently analyze probation, supervised release, and parole searches and seizures under the same framework and treat them generally interchangeably, although parolees have lower privacy interests than probationers. *See, e.g.*, *Samson v. California*, (Continued)

3

As the Supreme Court explained, the defendant's "status as a probationer subject to a search condition informs both sides of that balance" because "[p]robation, like incarceration, is a form of criminal sanction imposed by a court upon an offender after verdict, finding, or plea of guilty." *Id.* at 119 (internal quotation marks omitted). Thus, "[i]nherent in the very nature of probation is that probationers do not enjoy the absolute liberty to which every citizen is entitled." *Id.* (internal quotation marks omitted). And "[j]ust as other punishments for criminal convictions curtail an offender's freedoms, a court granting probation may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens." *Id.*

On the other hand, the Supreme Court has unequivocally held that the government's interests in conducting searches on supervisees and parolees, for instance, "are substantial" because such individuals "are more likely to commit future criminal offenses." *Samson*, 547 U.S. at 853 (internal quotation marks omitted). The Supreme Court has also acknowledged the government's "interests in reducing recidivism and thereby promoting reintegration and positive citizenship among probationers and parolees," which "warrant privacy intrusions that would not otherwise be tolerated under the Fourth Amendment." *Id.* Accordingly, when conducting the totality of the circumstances balancing analysis,

---

547 U.S. 843, 850 (2006) (analyzing legality of search of probationer under its holding in *Knights*, and observing that "parolees have fewer expectations of privacy than probationers[] because parole is more akin to imprisonment than probation is to imprisonment"); *United States v. Reyes*, 283 F.3d 446, 461 (2d Cir. 2002) (applying same principles to search of federal supervised releasee because "[a] convicted person serving a term of supervised release must comply with certain conditions, enforced by federal probation officers, or face further penal sanctions").

4

courts have upheld intrusions on the privacy interests of persons under court supervision under lower standards than the Fourth Amendment normally requires. *See, e.g.*, *Knights*, 534 U.S. at 121 ("When an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable."); *Reyes*, 283 F.3d at 462 (concluding that, because "home visits 'at any time'" conducted pursuant to a supervised release condition are "far less intrusive than a probation search, probation officers conducting a home visit are not subject to the reasonable suspicion standard" (emphasis omitted)).

Rocco asserts that law enforcement's seizure of his telephone during the execution of a search warrant on his residence was unconstitutional because, working in conjunction with law enforcement, his probation officer instructed him to return to his home, which brought him within the geographical location of law enforcement's search. However, Rocco, who was on supervised release at the time of law enforcement's search, was required to allow the probation officer to conduct at-home visits as a condition of his release. Thus, the probation officer's instruction that Rocco return home was only a minimal impingement on Rocco's privacy.

Regarding the Government's interests, "[i]t was reasonable to conclude that the [imposed] condition[s] would further the two primary goals of [supervised release]— rehabilitation and protecting society from future criminal violations." *Knights*, 534 U.S. at 119; *see United States v. Hamilton*, 986 F.3d 413, 418 (4th Cir. 2021) ("Key among [the primary goals of federal supervised release] are protection of the public and rehabilitation

5

of the defendant." (internal citations omitted)).   Indeed, the probation officer had a significant interest in ensuring that Rocco was complying with the terms of his release and was not harming the public by engaging in further crimes.  Notably, Rocco is a recidivist who had already violated the terms of his supervised release and, given law enforcement's possession of a residential search warrant, there was probable cause to believe that Rocco was violating again.

We therefore conclude that the district court did not err when it denied Rocco's motion to suppress and, thus, affirm the criminal judgment.[2]   We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*

---

[2] Given law enforcement's investigation into Rocco's conduct while on supervised release, as well as the probation officer's full knowledge of that investigation, we also defer to the district court's alternative finding that inevitable discovery doctrine applies in this case. *See United States v. Alston*, 941 F.3d 132, 137 (4th Cir. 2019) (explaining that evidence obtained illegally is admissible pursuant to the inevitable discovery doctrine "if the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means" (internal quotation marks and brackets omitted)); *see also United States v. Bullette*, 854 F.3d 261, 265 (4th Cir. 2017) (explaining that "[w]hether law enforcement would have inevitably discovered the evidence by lawful means is a question of fact," and that this court "accord[s] great deference to the district court's findings").

6